895 P.2d 1329

**STATE of New Mexico,
Plaintiff–Appellant,**

v.

**Anthony FOULENFONT and Leo
Archuleta, Defendants–
Appellees.**

No. 15787.

Court of Appeals of New Mexico.

March 13, 1995.

Certiorari Granted April 27, 1995.

Tom Udall, Atty. Gen., Jennifer L. Stone, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Sammy J. Quintana, Chief Public Defender, Sue A. Herrmann, Asst. Appellate Defender, Santa Fe, for defendants-appellees.

*OPINION*

PICKARD, Judge.

The State appeals from pretrial orders dismissing charges for burglary and conspiracy to commit burglary. On appeal, we consider whether the district court had authority to dismiss the charges prior to a trial on the merits. We also consider whether the district court properly ruled as a matter of law that a fence does not constitute a "structure" under our burglary statute. We hold that the district court had authority and properly

exercised that authority. Therefore, we affirm.

## BACKGROUND

Defendants were each charged with one count of misdemeanor larceny, one count of burglary, and one count of conspiracy to commit burglary. Prior to trial, Defendants moved to dismiss the burglary and conspiracy charges. Defendants argued that the factual predicate underlying the charges, entry of a fenced area, did not fit within the definition of burglary set forth in NMSA 1978, Section 30–16–3(B) (Repl.Pamp.1994). Specifically, they argued in a joint memorandum that a fence is not a "structure" as contemplated by the burglary statute. In its written response and at the motion hearing, the State raised a procedural challenge, arguing that dismissal would be improper under SCRA 1986, 5–601 (Repl.1992) because the motion was not capable of determination without trial on the merits. The State characterized the unauthorized entry as "climbing a 'chain link' fence" which, it argued, constituted a "structure" under Section 30–16–3(B). Specifically, the State described the facts as follows:

> Defendant[s] [are] accused of making an unauthorized entry into the premises of Repo Ranch in Socorro, New Mexico, and while there committing a larceny. The unauthorized entry was made by climbing a "chain link" fence which encloses the premises of the Repo Ranch. Repo Ranch is engaged in the mobile home sales business, and its inventory of mobile homes is kept within the fence.

The State submitted form orders reflecting the district court's decision at the motion hearing to dismiss the charges. The orders, adopted by the district court, state that no evidence was heard, but again indicate that the factual predicate underlying the charges is the unauthorized entry over a six- to eight-foot chain link fence. It is from these orders that Defendants appeal.

## DISCUSSION

### A. *Procedural Issue*

The State argues that dismissal was improper under SCRA 5–601(B), which allows only motions "capable of determination without a trial on the merits" to be raised prior to trial. In support of its argument, the State cites to *State v. Mares*, 92 N.M. 687, 594 P.2d 347 (Ct.App.), *cert. denied*, 92 N.M. 675, 593 P.2d 1078 (1979). In *Mares*, the defendant moved to dismiss an aggravated battery indictment on the ground that he had acted lawfully in his capacity as a peace officer, and therefore the incident did not fit within the statutory definition of the crime. *Id.* at 688, 594 P.2d at 348. After an evidentiary hearing, the district court found that the defendant had acted lawfully and dismissed the indictment. *Id.* This Court reversed, concluding that the district court improperly took away from the jury the factual issue of lawfulness. *Id.* at 689, 594 P.2d at 349. Likewise, in *State v. Masters*, 99 N.M. 58, 653 P.2d 889 (Ct.App.1982), this Court held that it was improper to dismiss a failure to appear charge on the basis of a factual determination made at the preliminary hearing stage.

We disagree that *Mares* and *Masters* require reversal under the circumstances of the present case for two reasons. First, the State never disputed that the burglary charges were predicated on the act of climbing over the Repo Ranch fence. Instead, the State's argument below focused on the legal issue of whether a fence comes within the definition of "structure" in Section 30–16–3(B). Therefore, the district court was never called upon to make the type of factual resolution prohibited under *Mares* and *Masters*.

Second, to the extent that *Mares* and *Masters* recognized a broader prohibition against a pretrial challenge to material allegations in an indictment or information, we find guidance in *State v. Ogden*, 118 N.M. 234, 880 P.2d 845, *cert. denied*, — U.S. —, 115 S.Ct. 336, 130 L.Ed.2d 294 (1994), where our Supreme Court authorized the use of pretrial SCRA 5–601 hearings to consider death penalty aggravating circumstances. The Court stated:

> A defendant who has been notified that the State will seek the death penalty may

move to dismiss an aggravating circumstance before trial. Pretrial rulings on the support of aggravating circumstances can present questions of fact, law, or mixed fact and law, and this will affect the standard of review. When the applicability of an aggravating circumstance presents a question of law capable of determination without trial ... [SCRA 5–601] applies and the district court should rule on the motion consistent therewith. A motion to dismiss an aggravating circumstance that presents a purely legal question should be granted when the district court finds that the aggravating circumstance does not apply as a matter of law.

*Ogden*, 118 N.M. at 239, 880 P.2d at 850 (footnote omitted).

As applied here, the district court had authority under SCRA 5–601 to consider the purely legal issue raised in Defendants' motion. We reject the State's contention that the district court had to initially conduct an evidentiary hearing to allow introduction of the evidence that the burglary charge was predicated on the unauthorized entry through a fence. As noted above, the State never disputed Defendants' characterization of the factual predicate underlying the charges, and instead engaged the district court in a purely legal argument. The State also declined the district court's invitation to propose additional facts to be included in the record. Accordingly, we believe that under the particular circumstances of this case the State has failed to point out any practical purpose that would have been served by an evidentiary hearing or, for that matter, a trial on the merits. *See State v. Portillo*, 110 N.M. 135, 137, 793 P.2d 265, 267 (1990) (statutes and rules should be interpreted with logic and common sense); *see also* SCRA 1986, 5–101(B) (Repl.1992). Dismissal was therefore an appropriate and effective means of promoting judicial efficiency in this case in light of the dispositive issue before the district court. *Cf. State v. Hodge*, 118 N.M. 410, 416, 882 P.2d 1, 7 (1994) (use of conditional plea agreements appropriate and do not preclude review where issues of law or mixed

issues of law and fact can be decided without trial).

### B. *Burglary Statute*

 "Burglary consists of the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, with the intent to commit any felony or theft therein." Section 30–16–3. We interpret this section by initially identifying the type of harm or evil the legislature intended to prevent. *See Ogden*, 118 N.M. at 244, 880 P.2d at 855. The State correctly points out that the general purpose of the burglary statute is "to protect possessory rights with respect to structures and conveyances and to define 'prohibited space'." *State v. Rodriguez*, 101 N.M. 192, 194, 679 P.2d 1290, 1292 (Ct.App.), *cert. denied*, 101 N.M. 189, 679 P.2d 1287 (1984) (citation omitted); *see also State v. Sanchez*, 105 N.M. 619, 620, 735 P.2d 536, 537 (Ct.App.) (burglary offense is "one against the security of property, and its purpose is to protect possessory rights"), *cert. denied*, 105 N.M. 618, 735 P.2d 535 (1987). We must therefore examine Section 30–16–3 to see if a fence is the type of "structure" that creates a prohibited space.

 Neither the burglary statute nor the Criminal Code provides a definition of "structure." As a result, we turn to the plain and ordinary meaning of the term. *See Ogden*, 118 N.M. at 243–44, 880 P.2d at 854–55. The State refers us to *Black's Law Dictionary* 1424 (6th ed. 1990), which defines "structure" as:

Any construction, or any production or piece of work artificially built up or composed of parts joined together in some definite manner. That which is built or constructed; an edifice or building of any kind.

A combination of materials to form a construction for occupancy, use or ornamentation whether installed on, above, or below the surface of a parcel of land.

The State acknowledges, however, that this Court has disapproved of a wholesale

adoption of this and similar commonly used definitions for purposes of construing the breadth of Section 30–16–3. In *State v. Bybee,* 109 N.M. 44, 781 P.2d 316 (Ct.App.1989), we held that a soft drink vending machine does not come within the purview of the statute, notwithstanding the fact that it technically fell within the plain meaning of "structure." *Id.* at 46, 781 P.2d at 318. Reviewing the history of the statute, we noted that the legislature deleted the common law requirement of "breaking" and expanded the crime to encompass places and structures other than a place of habitation or occupation. *Id.* at 45, 781 P.2d at 317. We applied the statutory construction rule of "ejusdem generis" in our effort to define the scope of the statutory expansion. *Id.* at 46, 781 P.2d at 318. We described that rule as "requiring that where general words follow an enumeration of persons or things of a particular and specific meaning, the general words are not construed in their widest extent but are instead construed as applying to persons or things of the same kind or class as those specifically mentioned." *Id.* Noting that criminal statutes are to be strictly interpreted, we concluded that the legislature did not intend to protect space within every physical structure created. *Id.*

■ Applying the *Bybee* analysis to the present case, we conclude that the scope of the burglary statute as set forth under the "or other structure" language does not encompass the facts as alleged here. We disagree with the State that our holding is in conflict with pre-*Bybee* cases adopting a literal interpretation of this language. *See State v. Gonzales,* 78 N.M. 218, 430 P.2d 376 (1967); *Sanchez,* 105 N.M. 619, 735 P.2d 536. *Gonzales* involved entry into a food store, and *Sanchez* involved entry into a separately secured portion of a store and entry into a separately occupied office in a church. As we interpret these cases, ejusdem generis was rejected insofar as the defendants were arguing that the "other structure" had to be akin to a dwelling or place of habitation and did not include buildings used for commercial or other purposes. It seemed clear in *Gon-*

*zales* and *Sanchez* that such an argument would undermine the legislative purpose of broadening the burglary statute beyond its common law origins. Moreover, the structures involved in those cases fit within the plain meaning of the statute.

■ The State notes that a number of courts in other jurisdictions have interpreted similar statutory language and have concluded that fences fall within the definition of "other structure." *See Townsend v. State,* 308 Ark. 266, 824 S.W.2d 821, 822 (1992); *People v. Moyer,* 635 P.2d 553, 556 (Colo. 1981) (en banc); *Joy v. State,* 460 N.E.2d 551, 558 (Ind.Ct.App.1984); *Stanley v. State,* 512 P.2d 829, 832 (Okla.Crim.App.1973); *State v. Roadhs,* 71 Wash.2d 705, 430 P.2d 586, 588 (1967). We believe, however, that these cases apply the type of unrestricted "plain meaning" analysis rejected in *Bybee.* A strict construction of our burglary statute requires a different result. *See Santillanes v. State,* 115 N.M. 215, 221, 849 P.2d 358, 364 (1993) (statutes defining criminal conduct must be strictly construed). We therefore interpret the phrase "other structure" in Section 30–16–3 to require an enclosure similar to a vehicle, watercraft, aircraft, or dwelling. *See State v. Gamble,* 56 N.C.App. 55, 286 S.E.2d 804, 805 (1982) (definition of "building" which included the phrase "dwelling … *and any other structure designed to house or secure within it any activity or property*" historically required the structure to have one or more walls and a roof). Our interpretation is supported by the fact that, unlike a fence, all of the enumerated objects in the statute are capable of completely confining people and their property. To the extent that *Rodriguez,* 101 N.M. 192, 679 P.2d 1290, allowed the burglary statute to apply to unlawful entry into the bed of a pickup truck, we believe that case is distinguishable. Vehicles are specifically enumerated in the statute, and the bed of the pickup truck serves the same function as the enclosed space in a car.

■ Finally, we disagree with the State's contention that businesses such as Repo

Ranch will unfairly be singled out for exclusion under the statute because they operate in an outdoor setting. The burglary statute would be applicable if Defendants had made an unauthorized entry into an office or a mobile home at Repo Ranch. Where the unauthorized entry merely consists of climbing over a fence, businesses and other open property are protected under our criminal trespass statute. NMSA 1978, § 30–14–1 (Repl.Pamp.1994).

## CONCLUSION

For the reasons stated above, we affirm.

IT IS SO ORDERED.

FLORES and BOSSON, JJ., concur.