2007-NMCA-091

164 P.3d 112

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Armando FERNANDEZ, Defendant–
Appellant.**

**No. 26,124.**

Court of Appeals of New Mexico.

June 6, 2007.

Gary K. King, Attorney General, Santa Fe, NM, Jacqueline R. Medina, Assistant Attorney General, Albuquerque, NM for Appellee.

Michael J. Dugan, Las Cruces, NM, for Appellant.

## OPINION

ALARID, Judge.

{1} In this appeal we consider whether Defendant's use of a BB gun during a robbery provided a sufficient factual basis to permit a jury to determine that a "deadly weapon" had been used, thereby satisfying an essential element of the crime of armed robbery. We conclude that a pre-trial dismissal of the charge would have been inappropriate, because a jury could have concluded that the manner and character of use of the weapon in this case satisfied the definition, and this determination is consistent with the legislative intent behind the statutory definition.

## BACKGROUND

{2} Defendant was indicted on one count of armed robbery, one count of conspiracy to commit armed robbery, and one count of contributing to the delinquency of a minor. The indictment stated that during the rob-

bery, "[D]efendant was armed with a hand gun, a deadly weapon." Defendant filed a pre-trial motion to dismiss the armed robbery charge, arguing that the State's factual predicate did not, as a matter of law, satisfy the deadly weapon definition. Defendant described these facts as follows:

1. On October 18, 2004, at approximately 10:00 a.m., Defendant and his accomplice ... used a BB gun to coerce Wendy's employee [the victim] out of funds totaling $2,544.17.

2. Defendant approached [the victim] in the Walmart parking lot near the intersection of Walton and Divot, after exiting the passenger side of the vehicle driven by [his accomplice].

3. Defendant held the BB gun close to his stomach and pointed it at [the victim's] abdomen. Defendant demanded the money from [the victim], which she promptly turned over, and then ran back to the car which sped away.

4. [The victim] reported no physical injuries and declined medical assistance. [The victim] was never placed in any physical danger, as the instrument used by the Defendant was an unloaded BB gun which closely resembled a handgun.

{3} At the hearing on Defendant's motion to dismiss, the district court asked the State if they would dispute the facts as set forth by Defendant. They indicated that there was really no dispute, and their position was similar to the position stated in their written response to the motion, which was that the only factual dispute was whether the manner and character of use of the BB gun satisfied the deadly weapon element. The district court subsequently agreed with the State and denied the motion. Defendant entered a conditional plea of guilty to one count of armed robbery and one count of conspiracy to commit armed robbery, and the State dismissed the contributing to the delinquency of a minor charge.

{4} The State's factual predicate at the plea hearing was similar to the facts set forth in Defendant's motion to dismiss, with two notable exceptions. First, the State indicated that during the robbery of the victim, Defendant "pointed what looked to her to be a handgun at her stomach area and demanded money." Second, there was no concession that the BB gun was unloaded. The State's reference to an investigation prior to the arrest and the failure to recover the stolen money indicates that there was no way of knowing whether the gun was loaded at the time the incident occurred. Defendant acknowledged at the plea hearing that the facts as set forth by the State were accurate. The district court accepted the plea, entered judgment, and this appeal follows.

**STANDARD OF REVIEW**

{5} We consider de novo the issue of whether the State set forth a sufficient factual predicate to satisfy the statutory definition of a deadly weapon. *See State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995). Defendant argues that, procedurally, this case is similar to *State v. Foulenfont*, 119 N.M. 788, 895 P.2d 1329 (Ct.App.1995), where this Court affirmed the pre-trial dismissal of charges based on undisputed facts and a consideration of the burglary statute at issue. *See* Rule 5–601(B) NMRA. As discussed below, this case leads to a different result than *Foulenfont*, because there is room for additional factual development and, in any event, the basic facts of this case call for a jury resolution of the deadly weapon issue.

**DISCUSSION**

{6} "Robbery consists of the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence." NMSA 1978, § 30–16–2 (1973). The robbery statute imposes an enhanced punishment when the perpetrator is armed with a deadly weapon. *Id.* The Legislature has provided the following definition:

"deadly weapon" means any firearm, whether loaded or unloaded; or any weapon which is capable of producing death or great bodily harm, including but not restricted to any types of daggers, brass knuckles, switchblade knives, bowie knives, poniards, butcher knives, dirk knives and all such weapons with which dangerous cuts can be given, or with which dangerous thrusts can be inflicted, including sword-

canes, and any kind of sharp pointed canes, also slingshots, slung shots, bludgeons; or any other weapons with which dangerous wounds can be inflicted[.] NMSA 1978, § 30–1–12(B) (1963).

{7} All objects specifically included in this definition are considered deadly weapons as a matter of law, and a jury determines whether additional objects were "weapons with which dangerous wounds can be inflicted" based on their character and manner of use. *Id.; see State v. Neatherlin,* 2007–NMCA–035, ¶ 13, 141 N.M. 328, 154 P.3d 703 (setting forth objects that can be found to be deadly weapons, including a baseball bat, stick, brick wall, trivet, screw driver, and tire tool, and adding human mouth to the list); *see also* UJI 14–1621 NMRA, use note 4 (setting forth deadly weapon language for armed robbery). It is well-settled that the fact-specific, case-by-case determination of whether an object satisfies the catch-all deadly weapon definition is to be made by a jury. *See State v. Traeger,* 2001–NMSC–022, ¶¶ 12–13, 130 N.M. 618, 29 P.3d 518 (noting that this rule can be traced back to *State v. Conwell,* 36 N.M. 253, 254, 13 P.2d 554, 555 (1932)).

{8} The State concedes, and we agree, that a BB gun is not a firearm or one of the other enumerated objects deemed to be deadly weapons as a matter of law. Our jury instructions and other provisions of the criminal code indicate that a firearm is defined as a device that expels its projection by the act of an explosion. *See* UJI 14–704 NMRA; NMSA 1978, § 30–7–16(C)(3) (2001). If a BB gun is considered a firearm, then the plain language of Section 30–1–12(B) dictates that it would be a deadly weapon as a matter of law irrespective of whether it was loaded or unloaded. *See State v. Luna,* 99 N.M. 76, 76–77, 653 P.2d 1222, 1222–23 (Ct.App.1982) (discussing unloaded firearm language in Section 30–1–12(B)). However, with a BB gun, also referred to as an air gun or pellet gun, the BB is propelled by compressed air, rather than an explosive charge. *See Webster's 3d New Int'l Dictionary* 189 (2002) (a BB gun is a "a smooth-bore air gun actuated by a spring-loaded plunger that upon release from the cocked position compresses the air behind the pellet and propels it from the tube"). Therefore, it is not a firearm.

{9} Because the State is alleging that the BB gun in this case falls within the catch-all exception, it follows that the matter is to be decided by a jury. *See Traeger,* 2001–NMSC–022, ¶ 13 ("We hold that when the character of the instrument and the manner of its use are necessary to determine whether an item is a deadly weapon, a jury should make that determination."). Defendant is attempting to bypass this well-established procedure by invoking Rule 5–601 to argue that pre-trial dismissal is appropriate because no rational jury could conclude that the facts supported a deadly weapon finding. As indicated, Defendant is relying on *Foulenfont* for the proposition that a pre-trial legal ruling is appropriate where the facts are not in dispute. However, *Foulenfont* is distinguishable because it was based on stipulated facts and involved the purely legal issue of whether a fence constituted a "structure" for purposes of the burglary statute, an issue that is not a part of a jury's factfinding function. 119 N.M. at 790–91, 895 P.2d at 1331–32. In contrast, the deadly weapon determination is quintessentially a jury issue. *See Traeger, 2001–NMSC–022,* ¶ 13. This distinction was specifically addressed in *State v. Montano,* 1999–NMCA–023, ¶ 11, 126 N.M. 609, 973 P.2d 861, which rejected the view that *Foulenfont* permitted an end run around the jury's factfinding role with respect to the deadly weapon inquiry.

{10} We also believe that the facts set forth by the State would permit a jury determination that a deadly weapon had been used in this case. The State was prepared to show that Defendant "pointed what looked to [the victim] to be a handgun at her stomach area and demanded money." A jury could reasonably conclude that this object (gun) combined with its manner of use (threat and pointing at the victim) indicated that it was a weapon that could inflict a dangerous wound. *See* § 30–1–12(B).

{11} Defendant's argument in this case is predicated on his assertion that the BB gun was unloaded. We believe that Defendant's

claim does not help him for three reasons. First, a jury could reasonably conclude that Defendant's threatening actions indicated that he might have used the gun as a bludgeon if the victim had not complied with his directives. Even if, as Defendant alleges, the BB gun was unloaded, Section 30–1–12(B) merely requires that an object be capable of inflicting the requisite harm. A jury should make this determination after it has an opportunity to view the weapon once admitted into evidence. *See State v. Gonzales,* 85 N.M. 780, 781, 517 P.2d 1306, 1307 (Ct. App.1973).

{12} A second reason that Defendant's claim does not help him is that, even if it was undisputed that the BB gun was not loaded at the time, there was no way for the victim to know this. As indicated above, Section 30–1–12(B) expressly designates unloaded firearms to be deadly weapons as a matter of law, regardless of their manner of use in any particular crime. In *Luna,* 99 N.M. at 77–78, 653 P.2d at 1223–24, this Court examined the legislative intent behind this designation, including the enhanced fear of the victim, the inability to know whether the weapon is loaded, and the potential escalation of violence that could result. Although the Legislature did not choose to designate unloaded BB guns as deadly weapons as a matter of law, we believe that it is consistent with the legislative intent expressed by the firearm designation to allow a jury determination where the manner of use supports such a finding. As indicated, the State presented evidence that Defendant pointed the BB gun at the victim, that the victim thought it was a handgun, and that Defendant used the threat of serious bodily harm as a means of commit-

ting the robbery. "The force or intimidation is the gist of the offense [of robbery]." *State v. Sanchez* 78 N.M. 284, 285, 430 P.2d 781, 782 (Ct.App.1967). Because the same rationale discussed in *Luna* applies here, we conclude that the Legislature intended for an enhanced punishment.

{13} Finally, Defendant's claim that the weapon was unloaded is based on his mere assertion. A jury would not be bound by this assertion. *See State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). To the extent that Defendant is arguing that the State had to prove that it was loaded, we believe that Defendant's manner of use leads to a reasonable inference that it was loaded when the threat was made. *See Adame v. State,* 69 S.W.3d 581, 582 (Tex.Crim.App. 2002) (holding that jury could reasonably infer that a BB gun pointed at the victim during robbery was loaded).

## CONCLUSION

{14} For the reasons set forth above, we conclude that the district court properly denied Defendant's pre-trial motion to dismiss the armed robbery charge. Accordingly, we affirm the judgment and sentence.

{15} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and MICHAEL D. BUSTAMANTE, Judges.