Certiorari Denied, December 23, 2009, No. 32,026
Certiorari Denied, December 23, 2009, No. 32,028

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMCA-009

Filing Date: September 8, 2009

Docket No. 28,431

STATE OF NEW MEXICO,

Plaintiff-Appellant,

v.

CASSANDRA LaPIETRA and
CHRISTOPHER TITONE,

Defendants-Appellees.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Carl J. Butkus, District Judge

Gary K. King, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Appellant

Lisa A. Torraco, Attorney at Law
Lisa Torraco
Albuquerque, NM

for Appellee Cassandra LaPietra

L. Helen Bennett, PC
L. Helen Bennett
Albuquerque, NM

Erika N. Poindexter, Attorney at Law, PC
Erika N. Poindexter
Albuquerque, NM

1

for Appellee Christopher Titone

**OPINION**

**ROBLES, Judge.**

**{1}**     Cassandra LaPietra and Christopher Titone (Defendants) were each indicted on two counts of intentional or negligent child abuse resulting in great bodily harm with alternative theories that either or both inflicted the abuse or knew, or should have known, that such abuse was being inflicted, contrary to NMSA 1978, Section 30-6-1(D)(1), (2) (2005) (amended 2009).  Both Defendants filed pretrial motions to dismiss, pursuant to Rule 5-601 NMRA and *State v. Foulenfont*, 119 N.M. 788, 895 P.2d 1329 (Ct. App. 1995), and the district court granted the motions.  The State now appeals the pretrial dismissals.  We reverse and remand to the district court to reinstate the case.

**I.     BACKGROUND**

**{2}**     A son and daughter (collectively, the children) were born to Defendants on December 16, 2005.  The children were getting regular checkups with healthcare providers through January 2006 and appeared to have no injuries.  Defendants and the children were residing with LaPietra's parents.  On February 6, 2006, the son was admitted into the hospital because of vomiting and dehydration.  On the morning of February 9, 2006, it was discovered that the son had numerous brain injuries, and hospital staff made a report to the Children, Youth and Families Department (CYFD) for child abuse.  Later that day, CYFD took the daughter into protective custody and discovered that she also had internal injuries that were the result of physical abuse.

**{3}**     Grand jury indictments were filed on January 29, 2007, charging Defendants with child abuse under alternate theories of permitting and/or causing the abuse, contrary to Section 30-6-1(D)(1), (2).  Defendants each filed pretrial motions to dismiss, pursuant to Rule 5-601 and *Foulenfont*, alleging that the facts of the case were undisputed and that, as a purely legal issue, there was a lack of substantial evidence that could prove the identity of the perpetrator who caused the injuries to the children.

**{4}**     On October 3, 2007, the district court held a hearing on the *Foulenfont* motions.  The record reveals that the district court reviewed transcripts of witness interviews and heard objections from the State that this particular case was not appropriate for a *Foulenfont* motion because the district court should not examine the sufficiency of the evidence when the State is relying on circumstantial evidence to prove the identity of the perpetrator.  For the purposes of the *Foulenfont* motions, Defendants stipulated that the children were abused.  However, Defendants urged that there was a lack of evidence showing that they were the ones that committed the abuse.  The district court, after reviewing a "voluminous amount of case law" and a "voluminous amount of factual material presented to it by the parties," granted the motions to dismiss the indictments with "some trepidation and hesitation."

**II.     DISCUSSION**

2

**{5}** The contours of the district court's power to conduct a pretrial hearing on a motion to dismiss charges brought under Rule 5-601 is a legal question reviewed under a de novo standard. *See State v. Roman*, 1998-NMCA-132, ¶ 8, 125 N.M. 688, 964 P.2d 852.

**{6}** The State argues that the district court erred in deciding the merits of the case before trial. In dismissing the indictments, the court stated that "for the purposes of these motions, 'it is only a question of who inflicted the abuse,'" and "[t]he present motions seek dismissal of the indictments based upon insufficiency of evidence, specifically an absence of evidence on the essential element of identity." The State argues that a determination of who hurt the children is a question of fact that should be decided by a jury and that a pretrial attack on the sufficiency of evidence under the guise of a *Foulenfont* motion does not avoid the prohibitions of NMSA 1978, Section 31-6-11(A) (2003). We agree.

**{7}** Judicial authority to rule on pretrial motions in criminal matters is outlined in Rule 5-601. According to Rule 5-601(B), "[a]ny defense, objection or request which is capable of determination without a trial on the merits may be raised before trial by motion." *See State v. Gomez*, 2003-NMSC-012, ¶ 8, 133 N.M. 763, 70 P.3d 753 (stating that where a motion involves factual matters that are not capable of resolution without a trial on the merits, Rule 5-601(B) requires the question to be submitted to the fact finder). In *Foulenfont*, we stated that it was proper for a district court to decide purely legal matters and dismiss a case when appropriate before trial. 119 N.M. at 790, 895 P.2d at 1331. Questions of fact, however, are the unique purview of the jury and, as such, should be decided by the jury alone. *Id.* at 789-90, 895 P.2d at 1330-31; *see State v. Hughey*, 2007-NMSC-036, ¶ 11, 142 N.M. 83, 163 P.3d 470 ("This Court has held that where a motion involves factual matters that are not capable of resolution without a trial on the merits, the trial court lacks the authority to grant the motion prior to trial."); *see also State v. Masters*, 99 N.M. 58, 59, 653 P.2d 889, 890 (Ct. App. 1982) (holding that factual questions were not to be decided in advance of trial); *State v. Mares*, 92 N.M. 687, 688-90, 594 P.2d 347, 348-50 (Ct. App. 1979) (concluding that the facts of a crime cannot be determined prior to trial).

**{8}** Defendants frame the issue as a legal question that asks whether the State had any evidence that would justify a jury trial. They state that "[a] complete lack of evidence does not require the impermissible weighing or determining of evidence, and can be properly determined as a matter of law based on undisputed . . . facts." Defendants agree, for the sake of their motions, that the State could prove a prima facie case that the children suffered abuse, but argue there is no evidence that Defendants caused the injuries. We interpret this argument to be that Defendants are not attacking the sufficiency of the evidence, but instead are arguing that there was a complete lack of evidence regarding the first element of the offense—that Defendants caused the children to be placed in a situation that endangered their life or health. *See* UJI 14-602 NMRA; UJI 14-603 NMRA. In effect, Defendants are arguing that the grand jury was mistaken in finding probable cause to indict and further, that the district court was correct in reviewing the grand jury's determination of the facts pretrial. We disagree with Defendants for two reasons.

**{9}** First, the question of who committed the abuse should be decided by the jury. The argument that Defendants make is essentially advocating how to characterize the pretrial transcripts of witness interviews that were given to the district court. The State argues that the transcripts did show

3

circumstantial evidence of who the perpetrator of the abuse was, and that a pretrial determination would prevent the State from gathering further evidence and would take the question away from the jury. Defendants argue that the transcripts show a complete absence of any evidence that indicates who committed the abuse. Defendants' argument, while stipulating to what is known at the pretrial juncture, amounts to a disagreement with the State as to what a reasonable jury could conclude.

**{10}** This situation is different from *Foulenfont*. In that case, the defendant and the state agreed to the fact that the defendant had climbed over a fence. The question was whether the fence constituted a "structure" for purposes of the burglary statute, an issue that was a pure matter of law (statutory construction). 119 N.M. at 790, 895 P.2d at 1331 (internal quotation marks omitted). However, the question of whether someone climbed over a fence and the question of whether a fence is a "structure" for purposes of the burglary statute are fundamentally different questions. The former is a question of fact—an element of the offense—and can be determined by circumstantial, as well as direct, evidence. Similarly, asking who committed child abuse after hearing testimony and reviewing evidence involves no questions of law or pure legal issues. Other New Mexico cases have acknowledged this distinction as well. When an issue involves a specific determination or finding, especially when it is an element of the offense, it is a question that is within the unique purview of the jury. *See Hughey*, 2007-NMSC-036, ¶ 14 (holding that the question of whether a defendant had a blood alcohol content outside of the legal limits at the time of a car accident when blood was drawn four hours after the accident was a question for the jury in light of conflicting expert testimony); *State v. Fernandez*, 2007-NMCA-091, ¶¶ 7-11, 142 N.M. 231, 164 P.3d 112 (concluding that it is well-settled law that a jury determines whether an object is used as a "deadly weapon" because it is a fact-specific inquiry and requires case-by-case determination); *Mares*, 92 N.M. at 688-90, 594 P.2d at 348-50 (stating that the question of whether a law enforcement officer was acting lawfully when he shot a man was a question of fact for the jury).

**{11}** The evidence contained in the transcripts can be viewed in a variety of ways, one of which would allow a jury to conclude that either Defendant or both Defendants committed the abuse, allowed the abuse to happen, or knew, or should have known, that the abuse was occurring. Thus, the question is not solely about who caused the abuse, but also encompasses other questions of who knew what and when. This is a matter for the jury that can only be resolved after seeing and hearing all the evidence, and it would be inappropriate for this Court to speculate because it is not clear what evidence would be presented or how it would be developed at trial. While the district court may have thought the State had a weak case, the district court did not have the opportunity to observe testimony of witnesses under oath, judge their credibility, weigh the evidence, and hear opposing arguments after the close of evidence. Aside from being impossible to tell what a jury might conclude given so many variables, "[i]t is the role of the factfinder to judge the credibility of witnesses and determine the weight of evidence." *Hughey*, 2007-NMSC-036, ¶ 16.

**{12}** Second, by reviewing all the facts pretrial, the district court stepped into the role of second-guessing the probable cause determination made by the grand jury. Under our legal system, the elected district attorney decides which cases to prosecute and, so long as there is a showing of probable cause to believe the accused has committed a prohibited offense defined by statute, a court should not dismiss a case because it views the merits of the case differently than the grand jury. *See State v. Brule*, 1999-NMSC-026, ¶ 14, 127 N.M. 368, 981 P.2d 782.

4

**{13}** Looking behind the grand jury's probable cause determination is an impermissible incursion on the fact finder's role. The district court stated in its order dismissing the indictments that sufficiency of the evidence was a legal issue, and the court was within its power to address it. The order further stated that the district court was not satisfied that the circumstantial evidence would allow a reasonable jury to conclude that Defendants inflicted the injuries on the children. Thus, the jury would have to speculate as to who the perpetrator was. This was error. District courts are simply not permitted to re-evaluate the sufficiency of the evidence behind an indictment prior to trial. *See Jones v. Murdoch*, 2009-NMSC-002, ¶ 19, 145 N.M. 473, 200 P.3d 523 ("[A] request for post-indictment relief would necessarily challenge the sufficiency of the evidence upon which the grand jury's indictment is based. As such, the target-turned-defendant must establish bad faith on the part of the prosecutor as a prerequisite to obtaining a dismissal of the indictment."); *State v. Romero*, 2006-NMCA-105, ¶ 5, 140 N.M. 281, 142 P.3d 362 ("[W]e conclude that (1) the 2003 version of Section 31-6-11(A) is directory and for the guidance of the grand jury, and (2) the Legislature has not authorized judicial review of the evidence presented to a grand jury except for its sufficiency and then only upon a showing of prosecutorial bad faith.").

**{14}** Section 31-6-11(A) provides that "[t]*he sufficiency of the evidence* upon which an indictment is returned *shall not be subject to review* absent a showing of bad faith on the part of the prosecuting attorney assisting the grand jury." (Emphasis added.) *See State v. Esquibel*, 90 N.M. 117, 118, 560 P.2d 181, 182 (Ct. App. 1977) ("This [C]ourt will not review the sufficiency of the evidence before the grand jury."). We note that there has been no claim in this case that the State has acted improperly in any way. Without a showing of bad faith on the part of the prosecuting attorney, attacking an indictment pretrial, but post-indictment, is prohibited. *See Maldonado v. State*, 93 N.M. 670, 671-72, 605 P.2d 363, 364-65 (1979) (explaining that there are compelling reasons for not going behind an indictment and inquiring into the evidence, including "the need for both judicial economy and secrecy of grand jury proceedings"); *Romero*, 2006-NMCA-105, ¶ 9 (noting that opening indictments for challenge would slow investigations, extend litigation, frustrate public desire for efficient justice, and intrude on the constitutionally independent offices of the prosecutor and the grand jury); *Masters*, 99 N.M. at 60, 653 P.2d at 891 ("New Mexico law prohibits district court review of the sufficiency of the evidence to indict.").

**{15}** Citing *State v. Leal*, 104 N.M. 506, 723 P.2d 977 (Ct. App. 1986), Defendants insist that, as a matter of law, there is no evidence to convict. In *Leal*, this Court determined that no evidence was presented to the jury that the parent was even present when the abuse occurred, and thus a conviction for permitting child abuse could not stand. *Id.* at 509, 723 P.2d at 980. *Leal*, however, involved the sufficiency of evidence after trial, not before. It is impossible to say what evidence will come out at trial, who will testify, how the jury will judge their credibility, and whether what is presented will be sufficient to sustain a conviction if a conviction even occurs.

**{16}** We are likewise unswayed by Defendants' reliance on *State v. Rendleman*, 2003-NMCA-150, 134 N.M. 744, 82 P.3d 554, *overruled on other grounds by State v. Myers*, 2009-NMSC-016, ¶ 32, 146 N.M. 128, 207 P.3d 1105. Defendants argue that *Rendleman* stands for the proposition that pretrial dismissal is a useful device where an element of a crime is lacking. This is not entirely accurate. *Rendleman* concerned an exception to the general rule limiting judicial pretrial fact finding, which allows a district court, in the face of a constitutional free speech defense, to conduct an independent review of photographs and dismiss charges that alleged sexual

5

exploitation of children where, on the undisputed face of the materials before the court, a jury could not find beyond a reasonable doubt that the material met the elements of the offense as defined by the Sexual Exploitation of Children Act, NMSA 1978, Sections 30-6A-1 to -4 (1984, as amended through 2007). *Rendleman*, 2003-NMCA-016, ¶¶ 30-37. There are no allegations of sexual exploitation and Defendants have not asserted a free speech defense in this case. To the extent that Defendants urge this Court to extend a similar exception to this case, we decline to do so.

## III. CONCLUSION

{17} The order dismissing the indictment is reversed. The cause is remanded with instructions to reinstate the case on the trial docket.

**{18} IT IS SO ORDERED.**

_____
**ROBERT E. ROBLES, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

_____
**CELIA FOY CASTILLO, Judge**

**Topic Index for *State v. LaPietra*, No. 28,431**

| | |
|---|---|
| **CL** | **CRIMINAL LAW** |
| CL-CN | Child Abuse and Neglect |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-DC | Dismissal of Charges |
| CA-GJ | Grand Jury |
| CA-IN | Indictment |
| CA-PA | Probable Cause |
| CA-SE | Substantial or Sufficient Evidence |