This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of non-precedential dispositions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                                          **No. 35,029**

**KATHY SERNA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY**
**J.C. Robinson, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
William A. O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**BOHNHOFF, Judge.**

**{1}** Defendant Kathy Serna struck a pedestrian while driving through the intersection of Broadway and Hudson Street in Silver City, New Mexico. The State charged her with great bodily injury by vehicle (reckless driving), in violation of NMSA 1978, Section 66-8-101 (2004, amended 2016),[1] which incorporated by reference NMSA 1978, Section 66-8-113(A) (1987). Pursuant to Rule 5-601(B) NMRA and *State v. Foulenfont*, 1995-NMCA-028, 119 N.M. 788, 895 P.2d 1329, Defendant moved to dismiss the great bodily injury by vehicle charge, arguing that as a matter of law her conduct did not constitute reckless driving. The district court denied the motion. In lieu of proceeding to a jury trial, Defendant thereafter conditionally pleaded guilty to the charge, but reserved the right to raise on appeal her great bodily injury by vehicle (reckless driving) conviction based on the issue of whether the district court erred in not granting her motion. Defendant appeals her conviction, arguing that the district court erred in denying the motion. We affirm.

**BACKGROUND**

**{2}** Based on the allegations of the information and the police reports of the traffic accident, Defendant asserted in her motion to dismiss that certain material facts were

---

[1]Section 66-8-101 was amended in 2016, but as this crime occurred in 2015, the 2004 version of the statute applies. Defendant was also charged with having no insurance, in violation of NMSA 1978, Section 66-5-205(B) (2013). The conviction of no insurance is not at issue in this appeal.

undisputed, and that, while she had been careless, there was no evidence that she acted willfully or wantonly and thus she could not be guilty of the crime of great bodily injury by vehicle based on reckless driving. According to Defendant, the undisputed material facts were:

3. In the afternoon of October 27, 2015, Defendant was driving a vehicle and was stopped at the stoplight at the intersection of Broadway and Hudson [Street], in Silver City, [New Mexico].

4. Defendant was stopped on Broadway and was facing east.

5. [Defendant] was waiting for the light to turn green so she could turn left (north) onto Hudson [Street].

6. Once the light turned green, Defendant paused in order to allow another vehicle, coming from the opposite direction, to cross the intersection.

7. Once the other vehicle crossed the intersection, Defendant entered the intersection and began turning left onto Hudson [Street].

8. Tragically, Defendant's vehicle struck a pedestrian that was in the crosswalk that runs from the northwest corner of the intersection to the northeast corner of the intersection [in front of a local convenience store.]

9. The pedestrian sustained great bodily injury.

10. Defendant waited for the light to turn green before she entered the intersection. She did not accelerate at an unreasonable rate through the intersection.

11. The only thing Defendant did wrong was act inattentively and not notice the pedestrian in the road.

3

{3}     Before filing its response to the motion, the State disclosed to Defendant a videotape obtained from a surveillance camera at a nearby convenience store that captured the incident. Following review of the videotape, which made clear that another vehicle had not passed through the intersection immediately before Defendant entered it, Defendant corrected the facts set forth in paragraphs six and seven of her motion to dismiss, eliminating the reference to the other vehicle.

{4}     In its response to the motion, the State stipulated to the facts, as corrected, set forth in Defendant's paragraphs three through nine. The State refused to stipulate to Defendant's assertion that "[s]he did not accelerate at an unreasonable rate" as she drove through the intersection (Defendant's motion to dismiss paragraph ten), or that "[t]he only thing Defendant did wrong was act inattentively and not notice the pedestrian in the road" (Defendant's motion to dismiss paragraph eleven). The State argued that the intersection in question was a known high-traffic area, and that the videotape demonstrated that Defendant either deliberately struck the victim or that "she was paying no attention whatever to her driving or to her surroundings." The State appears to have asserted that, either way, based on the videotape Defendant's actions evidenced willful and wanton conduct. In its response, the State did not address whether it would offer other evidence at trial in addition to the

videotape. Rather, the State separately filed a list identifying ten trial witnesses, including the victim.

{5}    At the hearing on Defendant's motion to dismiss, defense counsel relied on the videotape to support the argument that there was no evidence to establish recklessness. Defense counsel argued that Defendant "was going at a slow, steady speed. She wasn't weaving, she wasn't drag racing or anything of that nature, and unfortunately and tragically, she struck a pedestrian." The State relied on its written response. The district court, which had viewed the videotape prior to the hearing, denied Defendant's motion, stating:

> This is another case where there's no preliminary hearing. [Defendant is] asking me to determine facts. I reviewed the video. As near as I can tell, the State's response articulates what happened in that video in all respects. I don't know what's going to happen in trial in this case. We've got a jury trial scheduled; we will deal with it then. Motion denied.

{6}    Following entry of the order denying the motion to dismiss, Defendant took statements from the State's witnesses. In lieu of proceeding to trial, Defendant entered into a conditional plea agreement. The district court accepted, in relevant part, her plea of guilty to the great bodily injury by vehicle (reckless driving) charge, suspended a three-year incarceration sentence, and placed her on supervised probation for three years.

**ANALYSIS**

5

**{7}** Defendant reiterates on appeal the argument that she made below. Based on the videotape recording of the accident, she argues that there is no dispute about the facts. She contends that her conduct as shown in the videotape supports a factual finding that she was careless as opposed to reckless, and therefore as a matter of law she could not be found guilty of reckless driving pursuant to Section 66-8-113(A). She urges that, pursuant to *Foulenfont*, the district court should have granted her motion to dismiss. We disagree.

**A.    Standard of Review**

**{8}** "The contours of the district court's power to conduct a pretrial hearing on a motion to dismiss charges brought under Rule 5-601 is a legal question reviewed under a de novo standard." *State v. LaPietra*, 2010-NMCA-009, ¶ 5, 147 N.M. 569, 226 P.3d 668.

**B.    Section 66-8-113(A)**

**{9}** As stated earlier in this opinion, Defendant was charged with great bodily harm by vehicle (reckless driving) in violation of Section 66-8-101. In pertinent part, Section 66-8-101(B), (C) state that: "Great bodily harm by vehicle is the injuring of a human being . . . in the unlawful operation of a motor vehicle. . . . A person who commits . . . great bodily harm by vehicle . . . while violating Section 66-8-113 . . . is guilty of a third degree felony[.]" Section 66-8-113(A), in turn states that: "Any

6

person who drives any vehicle carelessly and heedlessly in *willful or wanton disregard* of the rights or safety of others *and* without due caution and circumspection *and* at a speed *or* in a manner so as to endanger or be likely to endanger any person or property is guilty of reckless driving." (Emphases added.) Thus, for Defendant to be found guilty of great bodily injury by vehicle (reckless driving), the jury would have to find that she violated Section 66-8-113(A). Indeed, UJI 14-240 NMRA, the uniform jury instruction for homicide or great bodily injury by vehicle, indicates that if the State is proceeding under the reckless driving theory of that crime, the appropriate element is that the defendant drove "in a reckless manner[,]" and that UJI 14-241 NMRA, the uniform jury instruction for reckless driving, must be given in addition to UJI 14-240. *See* UJI 14-240 Use Note 7. The language of UJI 14-241 tracks the language of Section 66-8-113(A).

{10}     Defendant argues that to establish reckless driving, New Mexico courts require egregious conduct that amounts to more than mere careless driving. *See, e.g.*, *State v. Ibn Omar-Muhammad*, 1985-NMSC-006, ¶¶ 3-9, 102 N.M. 274, 694 P.2d 922 (noting that the defendant was driving 100 miles per hour and driving through police roadblocks); *State v. Munoz*, 2014-NMCA-101, ¶ 3, 336 P.3d 424 (pointing out that the defendant continued to speed after he was warned by police that he was endangering others); *State v. Sandoval*, 1975-NMCA-096, ¶ 7, 88 N.M. 267, 539 P.2d

7

1029 (detailing that the defendant was speeding, "switching in and out of lanes, straddling lanes, turning corners very rapidly, and making illegal U-turns"); *State v. Richerson*, 1975-NMCA-027, ¶ 35, 87 N.M. 437, 535 P.2d 644 (noting that the defendant was both speeding and driving on the wrong side of the road). But in each decision, the court ruled only that the evidence was sufficient to convict the defendant of reckless driving following a jury trial; the court did not define a minimum standard of wrongful conduct that must support the charge. Therefore, while as a general matter careless driving without more is not sufficient to establish reckless driving, Defendant is not correct in contending that these decisions establish a definitive yardstick against which her conduct can be measured.

{11}    This is particularly the case given that recklessness—that is, the defendant's willful or wanton state of mind—is a question of fact. As this Court stated in *State v. Masters*, 1982-NMCA-166, ¶¶ 8, 10, 99 N.M. 58, 653 P.2d 889 (citations omitted): "The word 'willfully,' as used in our statute [regarding failure to appear], concerns the defendant's state of mind. 'Willfully' denotes the doing of an act without just cause or lawful excuse. The question of willfulness is a factual question. . . . Since willfulness is a factual question, the court erred in deciding it in advance of trial." *See also State v. Wiberg*, 1988-NMCA-022, ¶ 34, 107 N.M. 152, 754 P.2d 529 (observing

8

that, in analyzing whether reckless driving merged with vehicular homicide while driving under the influence, recklessness was a matter for the fact-finder to resolve).

**C.      Rule 5-601(B)**

{12}      Rule 5-601(B) provides that "[a]ny defense, objection or request which is capable of determination without a trial on the merits may be raised before trial by motion." In *Foulenfont*, the defendants were charged with burglary, which the state alleged was committed when the defendants entered into a fenced area. 1995-NMCA-028, ¶ 2. Under NMSA 1978, Section 30-16-3 (1971), burglary consists of "the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable[.]" The defendants moved under Rule 5-601(B) to dismiss the charge, arguing that as a matter of law a fence was not a "structure" as that term is used in Section 30-16-3. *Foulenfont*, 1995-NMCA-028, ¶ 2. The district court granted the motion and we affirmed. We noted that because (1) the defendants' argument was purely legal, (2) the state never disputed the defendants' characterization of the factual underpinnings of the charges, (3) the state did not contend there were any additional material facts, and (4) the court was "never called upon to make . . . [a] factual resolution," the issue whether a fence could be a "structure" was a question of law

9

capable of determination without a trial and thus Rule 5-601(B) authorized the court to make the ruling. *Foulenfont*, 1995-NMCA-028, ¶¶ 4, 6.

{13}    Using three different but related tests, however, New Mexico courts have significantly narrowed the parameters of questions encompassed by *Foulenfont*'s holding that "question[s] of law" may be resolved on a pretrial motion pursuant to Rule 5-601(B). *Foulenfont*, 1995-NMCA-028, ¶ 5. First, this Court has stressed that questions of fact that are reserved for determination by a jury may not be addressed on a Rule 5-601(B) motion. "Questions of fact . . . should be decided by the jury alone. . . . When an issue involves a specific determination or finding, especially when it is an element of the offense, it is a question that is within the unique purview of the jury." *LaPietra*, 2010-NMCA-009, ¶¶ 7, 10. In *LaPietra*, this Court held that the defendants could not invoke Rule 5-601(B) to challenge the sufficiency of the evidence that identified them as the perpetrators of the child abuse that was the basis of the criminal charges at issue. *Id.* ¶ 11. Similarly, in *State v. Fernandez*, 2007-NMCA-091, ¶ 14, 142 N.M. 231, 164 P.3d 112, this Court held that the defendant could not challenge on a Rule 5-601(B) motion the state's allegation that a BB gun was a "weapon with which dangerous wounds can be inflicted" within the meaning of NMSA 1978, Section 30-1-12(B) (1963). We state that:

It is well-settled that the fact-specific, case-by-case determination of whether an object satisfies the catch-all deadly weapon definition is to be made by a jury.

. . . .

*Foulenfont* is distinguishable because it . . . involved the purely legal issue of whether a fence constituted a "structure" for purposes of the burglary statute, an issue that is not a part of a jury's factfinding function.

*Fernandez*, 2007-NMCA-091, ¶ 7, 9. And in *Masters*, as mentioned above, this Court held that "willfully," as used in a statute that criminalizes the willful failure to appear before a magistrate, was a fact question, and therefore the district court erred in ruling in advance of trial that the defendant's failure to appear was not willful. 1982-NMCA-166, ¶ 8, 10.

{14}    Second, we have determined that a *Foulenfont* motion is appropriate only where, as was the case in that prosecution, the defendant simply accepts and does not dispute the State's factual allegations, and the evidence presented at trial would not change the result. Thus, in *State v. Wasson*, 1998-NMCA-087, ¶ 2-3, 125 N.M. 656, 964 P.2d 820, the defendant was charged with forgery, based on his act of signing his brother's name on traffic citations that were given to him for failing to obey a stop sign and other violations. "[The d]efendant's motion to dismiss does not attempt to contradict these allegations, and thus it presents a purely legal issue of whether forgery charges can be predicated on [the d]efendant's alleged conduct." *Id.* ¶ 5.

11

While this Court concluded that such facts could support a forgery conviction and therefore reversed the district court's dismissal of the charges, *see id.* ¶¶ 10-15, we agreed that the issue was properly addressed on a pretrial motion. *See id.* ¶ 5.

**{15}** In contrast, in *State v. Mares*, 1979-NMCA-049, ¶ 1, 92 N.M. 687, 594 P.2d 347, the defendant, a law enforcement officer, was charged with unlawful touching or application of force by use of a firearm. The district court conducted an evidentiary hearing to determine whether, at the time the alleged crime occurred, the defendant was "in the lawful discharge" of his law enforcement duties. *Id.* ¶ 2. After determining that the defendant was at all times material in the lawful performance of his duties, the district court dismissed the charge. *Id.* ¶ 3. We reversed, holding that "a motion to dismiss must not attempt to contradict the material allegations of the indictment." *Id.* ¶ 7, 20 (internal quotation marks and citation omitted). Similarly, in *State v. Pacheco*, 2017-NMCA-014, ¶ 10, 388 P.3d 307, this Court held that the amenability of an issue under Rule 5-601(B) depends on "whether the undisputed facts—whether stipulated to by the [s]tate or alleged in the indictment or information—show that the [s]tate cannot prove the elements of the charged offense at trial, thereby making a trial on the merits unnecessary."

{16}     Third, a Rule 5-601(B) motion generally may not be used to test the sufficiency of the state's evidence to establish the elements of the charged crime.[2] In *LaPietra*, in addition to holding that a question of fact is not a proper subject for a Rule 5-601(B) motion, this Court rejected "a pretrial attack on the sufficiency of evidence under the guise of a *Foulenfont* motion[.]" *LaPietra*, 2010-NMCA-009, ¶ 6. The defendants contended that the sufficiency of evidence question could be framed as a legal question that asked whether the state had any evidence that would justify a jury trial on the issue of whether they were the persons who abused the children, and that there was a complete lack of evidence to establish this element of the crime. *Id.* ¶ 3.

---

[2]Our Supreme Court twice has addressed the question of whether Rule 5-601(B) may be used to test the sufficiency of the state's evidence. In *State v. Gomez*, 2003-NMSC-012, ¶ 7, 133 N.M. 763, 70 P.3d 753, the court suggested in dicta that the sufficiency of the state's evidence can be tested with Rule 5-601(B) motion if the operative facts are undisputed and/or the state has made a full proffer of evidence. In *State v. Hughey*, 2007-NMSC-036, ¶ 13, 142 N.M. 83, 163 P.3d 470, our Supreme Court questioned even that limited proposition and reversed the district court's exclusion of evidence of a blood alcohol content test based in part on Rule 5-601(B). The court reasoned that:

> Our rules of criminal procedure provide for dismissal based on the [s]tate's failure to offer sufficient proof to carry its burden at two different points during trial: either after the [s]tate has presented its case or at the close of the presentation of all of the evidence. . . .
>
> . . . [T]he testimony of the [s]tate's expert raises a question of fact that should be resolved by a jury rather than by the trial court prior to trial.
>
> *Hughey*, 2007-NMSC-036, ¶¶ 14-15 (noting that conflicting expert testimony raised credibility issue that the jury had to resolve).

13

However, the state contended that circumstantial evidence linked the crime to the defendants. *Id.* ¶ 9.The debate, therefore, centered on what a reasonable jury could conclude from the evidence. *Id.* ¶¶ 8-9. We held that:

> This situation is different from *Foulenfont*. In that case, the defendant and the state agreed to the fact that the defendant had climbed over the fence. The question was whether the fence constituted a 'structure' for purposes of the burglary statute, an issue that was a pure matter of law . . . . However, the question of whether someone climbed over a fence and the question of whether a fence is a 'structure' for purposes of the burglary statute are fundamentally different questions. The former is a question of fact—an element of the offense—and can be determined by circumstantial, as well as direct, evidence. Similarly, asking who committed child abuse after hearing testimony and reviewing evidence involves no questions of law or pure legal issues. . . . When an issue involves a specific determination or finding, especially when it is an element of the offense, it is a question that is within the unique purview of the jury.

*LaPietra*, 2010-NMCA-009, ¶ 10; s*ee also Pacheco*, 2017-NMCA-014, ¶¶ 9-10 (criticizing invocation of *Foulenfont* to justify a pretrial challenge to the sufficiency of the state's evidence pursuant to Rule 5-601(B)).

**D.     Defendant's Rule 5-601(B) Motion Was Improper**

{17}     Under any of these three tests, Defendant could not properly seek dismissal of the great bodily injury by vehicle (reckless driving) charge pursuant to Rule 5-601(B). First, the element of willfulness or wantonness is a question of fact reserved for the jury. This is made clear not only by the case law construing Section 66-8-113, *see, e.g.*, *Wiberg*, 1988-NMCA-022, ¶ 34, but also by the holding in *Masters* that the

14

mental state necessary to convict the defendant of the crime of willful failure to appear before a magistrate was a question of fact. 1982-NMCA-166, ¶¶ 8, 10.

{18} Second, in this case the State and Defendant did not agree on the facts. Defendant did not simply accept the State's allegations as set forth in the criminal information, and the State was not willing to stipulate to Defendant's proposed material facts, in particular, that Defendant did not accelerate at an unreasonable rate as she drove through the intersection and that Defendant acted only carelessly as opposed to acting with a complete absence of care.

{19} Third, Defendant's motion effectively amounts to a challenge to the sufficiency of the State's evidence. Defendant's argument distills to the proposition that a reasonable jury could infer from the convenience store videotape only that Defendant acted carelessly and not that she acted willfully or wantonly. Defendant assumed—contrary to the State's witness list—that the State would offer no other evidence. But more fundamentally, Defendant improperly was asking the district court to make a determination about what the jury could and could not reasonably conclude from a review of the videotape. In this respect, this case is closely analogous to *LaPietra*. There, the defendants impermissibly asked the district court to infringe on the jury's role in reviewing the circumstantial evidence that the state offered to establish that the defendants had committed the child abuse in question. *LaPietra*,

2010-NMCA-009, ¶ 4. Here, Defendant impermissibly asked the district court to usurp the jury's role in reviewing the videotape and determining whether Defendant drove through the intersection recklessly or only carelessly. The issue cannot be characterized as a question of law any more than the issue in *Mares* of whether the law enforcement officer was "in the lawful discharge" of his duties at the time he committed the alleged crime in that case. *See Mares*,1979-NMCA-049, ¶ 2; s*ee also Wasson*, 1998-NMCA-087, ¶¶ 14-15 (holding that defendant's false signature on traffic citations could give rise to a reasonable inference of fraudulent intent and therefore the district court erred in dismissing the charge). The factual question of whether Defendant was reckless cannot be equated to the legal question presented in *Foulenfont* of whether a fence is a structure, even if it is framed in terms of sufficiency of the evidence. *See*1995-NMCA-028, ¶ 11.

{20} We note more generally that, while a picture may be worth a thousand words, we have concluded on other occasions that videotapes do not necessarily resolve questions of fact. In *State v. Martinez*, 2015-NMCA-051, ¶ 15, 348 P.3d 1022, this Court observed that "reviewing a video by itself is like reviewing any other documentary evidence, and we are in as good a position as the district court to view the video and interpret what it shows." But our point in saying this was that the video did not clearly establish whether the defendant's car was "just barely in the

16

intersection . . . or just barely behind the intersection . . . when it came to a stop[,]" *id.* ¶ 14, and thus it could not support a finding of reasonable suspicion for the stop that was not justified by other evidence. *Id.* ¶ 13; *cf. Benavidez v. Shutiva*, 2015-NMCA-065, ¶ 27, 350 P.3d 1234 (holding that videotape was not incontrovertible evidence that permitted ruling on fact issue as a matter of law); *Perez v. City of Albuquerque*, 2012-NMCA-040, ¶ 10, 276 P.3d 973 (same). Similarly, the videotape in this case did not establish as a matter of law that Defendant was, or was not reckless, when she drove through the intersection and struck the victim.

**CONCLUSION**

{**21**}     We affirm the district court's denial of Defendant's motion to dismiss and the subsequent conviction of great bodily injury by vehicle.

{**22**}     **IT IS SO ORDERED.**


_____
**HENRY M. BOHNHOFF, Judge**


**WE CONCUR:**


_____
**JONATHAN B. SUTIN, Judge**


_____
**STEPHEN G. FRENCH, Judge**

17