# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2020-NMCA-045**

**Filing Date: May 29, 2020**

**Nos. A-1-CA-36096, A-1-CA-37270, A-1-CA-37585 and A-1-CA-38283 (consolidated for purpose of opinion)**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellant,

v.

**DAVID GUTIERREZ,**

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Angie K. Schneider, District Judge**

and

**STATE OF NEW MEXICO,**

      Plaintiff-Appellant,

v.

**FRANCESCA ESTEVEZ,**

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY**
**Douglas R. Driggers, District Judge**

and

**STATE OF NEW MEXICO,**

      Plaintiff-Appellant,

v.

**CONNIE LEE JOHNSTON,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Louis E. DePauli, Jr., District Judge**

and

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**DEMESIA PADILLA,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Mary Marlowe Sommer, District Judge**

Certiorari Granted, September 8, 2020, Nos. S-1-SC-38367 and S-1-SC-38368; Cross-Petition Granted, September 8, 2020, Nos. S-1-SC-38367 and S-1-SC-38368.
Released for Publication October 6, 2020.

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellee Gutierrez

Francesca Estevez
Gila, NM

Pro Se Appellee

Ray Twohig
Albuquerque, NM

for Appellee Johnston

Kennedy, Hernandez & Associates, P.C.
Paul J. Kennedy
Jessica M. Hernandez
Albuquerque, NM

for Appellee Padilla

State Ethics Commission
Jeremy Farris
Walker Boyd
Albuquerque, NM

for Amicus Curiae

## OPINION

**VARGAS, Judge.**

**{1}** Does a government official who fails to abide by the ethical principles imposed by the Legislature commit a crime under the Governmental Conduct Act (GCA), NMSA 1978, §§ 10-16-1 to -18 (1967, as amended through 2019)? This is the question we are called upon to answer in each of these four separate cases.

**{2}** The State appeals four district court orders dismissing charges against Defendants David Gutierrez, Francesca Estevez, Connie Lee Johnston, and Demesia Padilla under the GCA in four separate and unrelated cases. The district court dismissed the charges against each Defendant under the GCA on different grounds. The charges against one Defendant were dismissed on the ground that Subsections 10-16-3(A)-(C) do not provide for criminal offenses. Those against a second Defendant were dismissed on the ground that Subsections (A)-(C) are too ambiguous to apply. Charges against a third were dismissed on the ground that the statute is unconstitutionally vague. Finally, charges against a fourth Defendant were dismissed on grounds that the statute is both unconstitutionally vague and overbroad. Because these cases raise several identical issues, we consolidate them for decision. *See* Rule 12-317(B) NMRA. Concluding that the Legislature intended for knowing and willful violations of Subsections 10-16-3(A)-(C) to be punishable as misdemeanors, we reverse the district courts' decisions dismissing charges brought under Subsection 10-16-3(A), but affirm the district courts' decisions dismissing charges brought under Subsections 10-16-3(B) and (C) on the ground of vagueness.

## BACKGROUND

**{3}** These four cases came to us with very different facts and a varying procedural backgrounds, but they share a common thread: each case arises from an allegation of

misconduct by a government official. We therefore begin by setting forth the relevant factual and procedural background for each case leading up to consolidation.

**Defendant David Gutierrez**

{4}     The State charged Defendant Gutierrez with violating Subsections 10-16-3(A)-(C) of the GCA, alleging he pursued an unwanted sexual relationship with one of his employees during the course of his work as county treasurer by repeatedly commenting on her physical appearance and offering to give her money and use his authority as treasurer to expunge a prior disciplinary write-up in exchange for sex. Defendant Gutierrez filed three motions, which included a motion in limine, a motion to dismiss, and a motion pursuant to *State v. Foulenfont*, 1995-NMCA-028, ¶ 6, 119 N.M. 788, 895 P.2d 1329 (authorizing dismissal of a case in lieu of an evidentiary hearing or a trial on the merits where a case raises a purely legal issue). These motions made largely the same assertion—that the provisions of Subsections 10-16-3(A)-(C) do not define or create criminal offenses, but instead are ethical principles intended to guide the behavior of public officials.

{5}     The district court granted Defendant Gutierrez's motions and dismissed the indictment, reasoning that violations of Subsections 10-16-3(A)-(C) were not crimes but "ethical considerations," and that the grand jury indictment, therefore, "failed to allege the commission of a criminal offense." The State appealed the dismissal of Defendant Gutierrez's charges.

**Defendant Francesca Estevez**

{6}     The State charged Defendant Estevez, in relevant part, with violating Subsections 10-16-3(A) and (B) of the GCA, alleging she attempted to use her position as district attorney to manipulate or intimidate officers who were investigating allegations that she improperly used a state vehicle for personal use. Defendant Estevez filed a motion to dismiss these counts, arguing the GCA was unconstitutionally vague. The district court concluded that although Section 10-16-3 establishes "advisory guideposts setting forth standards of ethical conduct[,]" insurmountable ambiguities existed regarding its intended scope and the applicability of Section 10-16-17's provision for criminal penalties. As a result, the district court applied the rule of lenity and dismissed the charges. The State appealed the dismissal of Defendant Estevez's charges.

**Defendant Connie Lee Johnston**

{7}     The State charged Defendant Johnston, in relevant part, with violating Subsections 10-16-3(A) and (B) based on allegations that, while acting in her capacity as a magistrate judge, Defendant Johnston unlawfully recorded the communications of her colleagues and coworkers in secure areas within the Aztec Magistrate Court Building. Defendant Johnston filed a motion to dismiss these charges, arguing that the subsections at issue set forth "aspirational provisions" rather than criminal offenses and

are unconstitutionally vague. The district court dismissed the charges, concluding that even if Subsections (A) and (B) provided for criminal offenses, they were nevertheless void for vagueness. The State appealed the dismissal of Defendant Johnston's charges.

**Defendant Demesia Padilla**

{8}     The State charged Defendant Padilla, in relevant part, with violating Subsections 10-16-3(B) and (C), alleging she used her position as the Secretary of the New Mexico Taxation and Revenue Department to access the tax records of the accounting firm at which she worked prior to her appointment as well as the records of her former clients. Defendant Padilla filed motions to dismiss these charges, arguing the subsections at issue were unconstitutionally vague and overbroad. The district court granted Defendant Padilla's motions and dismissed these charges. The State appealed.

## DISCUSSION

{9}     On appeal, the parties ask us to consider two issues. First, we are called on to decide whether violations of Subsections 10-16-3(A)-(C) are criminal offenses. In the event we conclude the violation of those subsections can be prosecuted as crimes, we are next asked to consider whether they are ambiguous or unconstitutionally vague. Defendant Padilla also asks us to consider whether Subsections (B) and (C) are overbroad. We conclude that Subsections (A)-(C) set out criminal offenses, that Subsection (A) is not unconstitutionally vague, and that Subsections (B) and (C) are unconstitutionally vague. As our void-for-vagueness discussion is dispositive for the charges brought under Subsections (B) and (C), we need not reach the issue of overbreadth raised by Defendant Padilla.

### I.     Applicability of Section 10-16-17 to Subsections 10-16-3(A)-(C)

{10}    The State contends that the district court erred when it concluded the provisions of Subsections 10-16-3(A)-(C) set out only "ethical considerations" rather than crimes. In support of its argument, the State contends that the plain language of Section 10-16-17 renders any knowing and willful violation of Subsections 10-16-3(A)-(C) a misdemeanor, "[u]nless specified otherwise [in the GCA.]" The State also argues that the Legislature's use of mandatory language in Subsections (A)-(C) makes clear its intent that violations of those subsections are punishable as misdemeanors.

{11}    In response to the State, Defendants first contend that the plain language of Subsections (A)-(C) supports the conclusion that the violation of those subsections are not crimes. Second, pointing to other statutory provisions within the GCA mandating certain ministerial and reporting duties, Defendants contend that it would be absurd to conclude that the Legislature intended that all provision of the GCA containing mandatory language trigger criminal liability if violated. Third, Defendants contend that violations of Subsection (C) may result in only civil, not criminal, penalties. Fourth, Defendants argue that Subsections (A)-(C) are so ambiguous that the rule of lenity requires that we construe them as not providing for criminal offenses.

## A.     Statutory Interpretation

**{12}**     The parties' arguments require that we interpret Subsections 10-16-3(A)-(C), in conjunction with Section 10-16-17. Statutory interpretation is an issue of law we review de novo. *See Badilla v. Wal-Mart Stores E. Inc.*, 2015-NMSC-029, ¶ 12, 357 P.3d 936 ("Interpretation of a statute is an issue of law which we review de novo." (alteration, omissions, internal quotation marks, and citation omitted)). When interpreting statutes, we must determine and give effect to the Legislature's intent, which requires that "we look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Chatterjee v. King*, 2012-NMSC-019, ¶ 11, 280 P.3d 283 (alteration, internal quotation marks, and citation omitted). "[I]f the meaning of a statute is truly clear—not vague, uncertain, ambiguous, or otherwise doubtful—it is of course the responsibility of the judiciary to apply the statute as written and not to second-guess the [L]egislature's selection from among competing policies or adoption of one of perhaps several ways of effectuating a particular legislative objective." *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 22, 117 N.M. 346, 871 P.2d 1352. We therefore first consider whether the language of the statutes at issue is clear, or whether we must look further before applying the statutes to the facts of these cases.

**{13}**     While the parties focus their analysis on the provisions of Subsections 10-16-3(A)-(C), we begin with a review of Section 10-16-17, which establishes the parameters of criminal conduct under the GCA. Section 10-16-17 provides:

> *Unless specified otherwise in the* [*GCA*]*, any person who knowingly and willfully violates any of the provisions of [the GCA] is guilty of a misdemeanor* and shall be punished by a fine of not more than one thousand dollars ($1,000) or by imprisonment for not more than one year or both. Nothing in the [GCA] shall preclude criminal prosecution for bribery or other provisions of law set forth in the constitution of New Mexico or by statute.

(Emphasis added.) Before a defendant is guilty of a misdemeanor under Section 10-16-17, three requirements must be satisfied. First, a defendant must have violated a provision of the GCA. Second, the violation must have been knowing and willful. And, third, the violation must not be subject to treatment otherwise specified in the GCA.

**{14}**     Without addressing the specific requirements of Section 10-16-17 that trigger misdemeanor criminal liability, Defendants maintain that the Legislature did not intend for Section 10-16-17 to apply to violations of Section 10-16-3. Section 10-16-3 provides:

> **Ethical principles of public service; certain official acts prohibited; penalty.**
>
> A.     A legislator or public officer or employee shall treat the legislator's or public officer's or employee's government position as a

public trust. The legislator or public officer or employee shall use the powers and resources of public office only to advance the public interest and not to obtain personal benefits or pursue private interests.

  B.  Legislators and public officers and employees shall conduct themselves in a manner that justifies the confidence placed in them by the people, at all times maintaining the integrity and discharging ethically the high responsibilities of public service.

  C.  Full disclosure of real or potential conflicts of interest shall be a guiding principle for determining appropriate conduct. At all times, reasonable efforts shall be made to avoid undue influence and abuse of office in public service.

  D.  No legislator or public officer or employee may request or receive, and no person may offer a legislator or public officer or employee, any money, thing of value or promise thereof that is conditioned upon or given in exchange for promised performance of an official act. Any person who knowingly and willfully violates the provisions of this subsection is guilty of a fourth degree felony and shall be sentenced pursuant to the provisions of [NMSA 1978,] Section 31-18-15 [(2019)].

In support of their argument, Defendants point to the heading of Section 10-16-3— "Ethical principles of public service; certain acts prohibited; penalty"—claiming the heading evidences a legislative intent contrary to the plain meaning of Section 10-16-17 for two reasons. First, Defendants contend the heading indicates that compliance with Subsections (A)-(C) is merely aspirational and, therefore, any violations of those provisions are not crimes. Second, Defendants claim the heading demonstrates that criminal penalties are limited to the activities set out in Subsection (D).

**{15}** Initially we note that when discerning the Legislature's intent, we may look to a section's heading, "and ordinarily it may be considered as a part of the act if necessary to its construction." *Tri-State Generation & Transmission Ass'n, Inc. v. D'Antonio*, 2012-NMSC-039, ¶ 18, 289 P.3d 1232 (internal quotation marks and citation omitted); *see also* NMSA 1978, § 12-2A-13 (1997) ("Headings and titles may not be used in construing a statute or rule unless they are contained in the enrolled and engrossed bill or rule as adopted."). We may not use a section's heading, however, "to produce an ambiguity in a statute which is otherwise clearly drafted[.]" *Serrano v. State, Dep't of Alcoholic Beverage Control*, 1992-NMCA-015, ¶ 12, 113 N.M. 444, 827 P.2d 159. Any such ambiguity must derive from the body, not the heading, of the statute. *See State v. Ellenberger*, 1981-NMSC-056, ¶ 6, 96 N.M. 287, 629 P.2d 1216 (concluding that "the ambiguity which justifies a resort to the title must arise in the body of the act; an ambiguity arising from the title is not sufficient" (internal quotation marks and citation omitted)). The heading of a section "cannot limit the plain [meaning] of the text." *Id.* (internal quotation marks and citation omitted); *see* 73 Am. Jur. 2d *Statutes* § 100 (2020) (explaining that although a section's heading is a tool "for the resolution of doubt

about the meaning of a statute[,]" the heading "is only a short-hand reference to the general subject matter involved in that statutory section and cannot limit the plain meaning of the text" (footnotes omitted)).

**{16}**    Here, Defendants rely on the heading of Section 10-16-3 to establish a limitation that is not contained in the text of the statute—that compliance with Subsections (A)-(C) is merely aspirational and not subject to the criminal penalty set out in Section 10-16-17. We understand Defendants' argument to be that the Legislature's use of the word "principles," rather than "standards," in Section 10-16-3's heading indicates that the Legislature did not intend to require legislators, public officials, and public employees to comply with Subsections (A)-(C)'s provisions. Defendants reason that because "standards" is defined at Section 10-16-2(J) as "conduct *required* by the [GCA]," and the Legislature chose not to use "standards" in the heading to Section 10-16-3, it did not intend to require compliance and therefore did not intend for violations of Subsections (A)-(C) to be subject to criminal penalty. (Emphasis added.)

**{17}**    While we agree that the word "standards" does not appear in the heading or text of Section 10-16-3, Defendants' argument fails to explain how Subsections (A)-(C) are extracted from the express language of Section 10-16-17 that a knowing and willful violation of any provision of the GCA, unless specified otherwise, is a misdemeanor. We therefore decline to read into Section 10-16-3 an ambiguity based entirely upon the section's heading when the plain meaning of the text, read together with Section 10-16-17, indicates a legislative intent that a violation, if knowing and willful, is subject to criminal penalty. *See Serrano*, 1992-NMCA-015, ¶ 12; *see also State ex rel. Children, Youth & Families Dep't v. Djamila B.*, 2014-NMCA-045, ¶ 10, 322 P.3d 444 ("The statute or statutes, whose construction is in question, are to be read in connection with other statutes concerning the same subject matter." (alteration, internal quotation marks, and citation omitted)).

**{18}**    Second, Defendants argue the section's heading demonstrates that only certain official acts described in Section 10-16-3 are prohibited and therefore subject to a penalty. Those prohibited acts, Defendants contend, are set out in Subsection (D). Subsections (A)-(C), by contrast, are merely general ethical principles and therefore, do not set out crimes. Insofar as Defendants contend the order and structure of the heading is indicative of the Legislature's intent to limit the prohibition and criminalization to those acts described in Subsection 10-16-3(D), we reiterate that the heading of a section cannot limit the plain meaning of the section's text. *See Ellenberger*, 1981-NMSC-056, ¶ 6. In light of our conclusion that the plain meaning of Sections 10-16-3 and -17 indicates a legislative intent to provide for a misdemeanor penalty for a knowing and willful violation of Subsections 10-16-3(A)-(C), we reject Defendants' argument that the section's heading instructs otherwise.

**{19}**    To the extent the district court that dismissed Defendant Gutierrez's charges concluded that the language of Subsection 10-16-3(D), making it a felony to knowingly and willfully violate that subsection, removed Section 10-16-3 from the applicability of

Section 10-16-17 in its entirety,[1] we disagree. The interplay between Sections 10-16-3 and -17 demonstrates that Subsection 10-16-3(D) does not serve to exclude Subsections 10-16-3(A)-(C) from the applicability of Section 10-16-17. Subsection (D) specifically provides for a fourth-degree felony penalty for knowing and willful violations and limits the application of its felony penalty to violations of "the provisions of *this subsection*[.]" Section 10-16-3(D) (emphasis added). The plain meaning of Section 10-16-17's introductory proviso ("Unless specified otherwise in the [GCA] . . .") makes clear that the heightened criminal penalty in Subsection (D) is an exception to the general misdemeanor penalty established by Section 10-16-17 for violations of "any of the provisions of [the GCA]," which necessarily includes those found within Subsections (A)-(C). *Cf. State v. Santillanes*, 2001-NMSC-018, ¶ 7, 130 N.M. 464, 27 P.3d 456 (characterizing the "general/specific statute rule" as a tool of statutory construction, in which a "specific statute operates as an exception to the general statute").

**{20}** This conclusion, however, does not end our inquiry. Indeed, as Justice Montgomery warned in *Helman*, "courts must exercise caution in applying the plain meaning rule. Its beguiling simplicity may mask a host of reasons why a statute, apparently clear and unambiguous on its face, may for one reason or another give rise to legitimate (i.e., nonfrivolous) differences of opinion concerning the statute's meaning. In such a case, it can rarely be said that the legislation is indeed free from all ambiguity and is crystal clear in its meaning." 1994-NMSC-023, ¶ 23.

**{21}** Here, Defendant Padilla argues application of the plain language of Section 10-16-17 would lead to an absurd result. "If adherence to the plain meaning of a statute would lead to absurdity, we must reject that meaning and construe the statute according to the obvious intent of the [L]egislature." *State v. Maestas*, 2007-NMSC-001, ¶ 16, 140 N.M. 836, 149 P.3d 933; *see Gandydancer, LLC v. Rock House CGM, LLC*, 2019-NMSC-021, ¶ 14, 453 P.3d 434 ("The plain meaning rule must yield when equity, legislative history, or other sources demonstrate that applying the plain meaning would result in a construction contrary to the spirit of the statute." (internal quotation marks and citation omitted)).

**{22}** Defendant Padilla, however, fails to explain how the strict adherence to the plain meaning of Section 10-16-17's general misdemeanor penalty results in an absurdity if applied to Subsections 10-16-3(A)-(C). Instead, she points to sections not at issue in the cases at bar. *See, e.g.*, §§ 10-16-4.2 (requiring public officers and employees to disclose all outside employment); -8(D) ("For a period of one year after leaving government service or employment, a former public officer or employee shall not represent for pay a person before the state agency or local government agency at which the former public officer or employee served or worked."); -9(B) (prohibiting—with

---

1The district court stated:

Both of those statutes [Sections 10-16-3 and 10-16-4], there is one paragraph that articulates . . . those acts as a fourth degree felony . . . those are the only two in the whole Act that are specified differently than the others. So that pulls those two out from [Section] 10-16-17. So I'm not reading [Sections] 10-16-3 or 10-16-4 . . . under the Act, to outline misdemeanor charges.

exceptions for attorneys or other professionals—legislators from representing or assisting another person in a matter before a state agency for pay); -11(B) (requiring officers and employees be provided with and review codes of conduct); -11(E) (requiring legislators to attend continuing education and training in ethics).

**{23}** While we understand Defendant Padilla's point to be that it would be absurd to criminally punish a legislator, public officer, or public employee for his or her failure to comply with certain mandatory ministerial or reporting activities required by the GCA, we note that the GCA provides a broad spectrum of enforcement mechanisms, described below in Section I(B). These enforcement mechanisms take into account the culpability of the actor, which may be relevant to Defendant Padilla's argument regarding these other provisions. Nevertheless, we need not pass judgment on the applicability of the criminal penalty set out in Section 10-16-17 to the violations of other sections of the GCA, as those violations are not before us today. More importantly, Defendant Padilla fails to explain why it would be absurd for us to interpret a violation of Subsections 10-16-3(A)-(C), done in a knowing and willful manner as required by Section 10-16-17, to be a misdemeanor in accordance with the plain language of that statute. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (observing that "we do not review unclear or undeveloped arguments which require us to guess at what parties' arguments might be"). Even if we were to harbor a personal opinion that the Legislature may have desired to include Subsections (A)-(C) as nothing more than aspirational guidelines, we cannot avoid the clear language of Section 10-16-17.

**{24}** Indeed, the legislative history of Section 10-16-3 and Section 10-16-17 bolsters our conclusion that adherence to the plain meaning rule under the facts of this case does not produce a result contrary to the spirit of the GCA. First, we note that the Legislature enacted Sections 10-16-3 and -17 in the same bill in 1993. *See* 1993 N.M. Laws, ch. 46, §§ 28, 37. We presume that when it enacted these statutes together, it intended that a knowing and willful violation of Subsections 10-16-3(A)-(C) give rise to the misdemeanor criminal penalty called for in Section 10-16-17. Since its enactment in 1993, the Legislature has taken the opportunity to add and amend other sections in the GCA on six separate occasions, yet it has never amended Section 10-16-17, suggesting its continued intent to impose the criminal penalty set out in that section. *See* 1995 N.M. Laws, ch. 153, § 23; 2003 N.M. Laws, ch. 33, § 1; 2007 N.M. Laws, ch. 362, §§ 1-11; 2009 N.M. Laws, ch. 66, § 11; 2011 N.M. Laws, ch. 138, §§ 1-13; 2019 N.M. Laws, ch. 86, §§ 23-26. Importantly, Defendants have failed to point us to any evidence, and we have found none, clearly indicating the Legislature's intent to exclude Subsections 10-16-3(A)-(C) from Section 10-16-17's general misdemeanor provision. [2]

---

[2]Defendants rely on the Attorney General's GCA Compliance Guide as support for their argument that Subsections (A), (B), and (C) are not intended to provide for criminal offenses. *See* N.M. Att'y Gen., *Governmental Conduct Act Compliance Guide* (*Compliance Guide*) at 10 (2d ed. 2015) (explaining under Subsections (A) and (B) that "[t]his part of the GCA summarizes why we have ethics laws: to help ensure the public's trust in the honesty of our elected and appointed public officials"); *Compliance Guide, supra*, at 17 (explaining that Subsection 10-16-3(C) and Section 10-16-4 "strongly warn all public officials and employees . . . against using their public authority to benefit their private financial interests"; and noting the possible criminal penalty for violation of Section 10-16-4, but

*See State v. Davis*, 2003-NMSC-022, ¶ 6, 134 N.M. 172, 74 P.3d 1064 ("The legislative history of the statute, including historical amendments, and whether it is part of a more comprehensive act, is instructive when searching for the spirit and reason the Legislature utilized in enacting the statute[.]" (citation omitted)); *see also Maestas*, 2007-NMSC-001, ¶ 22 ("Although we give effect to legislative intent by construing statutes to avoid absurd results, we must assume the [L]egislature chose its words advisedly to express its meaning unless the contrary intent clearly appears." (alterations, internal quotation marks, and citations omitted)). Absent evidence of such legislative intent, we must "apply the statute as written" and refrain from "second-guess[ing] the [L]egislature's [chosen manner] . . . of effectuating [its] legislative objective." *Helman*, 1994-NMSC-023, ¶ 22; *see also*, *N.M. Petroleum Marketers Ass'n v. N.M. Envtl. Improvement Bd.*, 2007-NMCA-060, ¶ 11, 141 N.M. 678, 160 P.3d 587 (applying the plain meaning rule when "[a]ppellants have not convinced us that adherence to the literal meaning of the broad language employed by . . . the Legislature would lead to injustice, absurdity, or internal contradiction").

## B.     Penalties for Violations of Subsection 10-16-3(C)

**{25}**     Without citing any particular statutory provision or other authority, Defendant Gutierrez argues the penalty for a violation of Subsection 10-16-3(C) is limited to civil sanctions or penalties. *See State v. Smith*, 2019-NMCA-027, ¶ 9, 458 P.3d 613 (explaining that when a party fails to cite supporting authority, we may assume no such authority exists), *cert. denied*, 2019-NMCERT-___ (No. S-1-SC-37596, May 1, 2019). We note that the GCA does provide for both civil and criminal penalties. In instances of violations of the GCA that were unintentional or for good cause, the state ethics commission has the authority to seek voluntary compliance with the provisions of the GCA by correcting the violation within ten days of receiving notice. Section 10-16-13.1(B). The state ethics commission also has the authority to either institute a civil action or refer the matter to the attorney general or a district attorney to institute a civil action "if a violation has occurred or to prevent a violation of any provision of the [GCA]." Section 10-16-18(B); *see also* § 10-16-13.1(B) (providing that referrals for civil enforcement "shall be pursued only after efforts to secure voluntary compliance with [the GCA] have failed"). Alternatively, "[i]f the state ethics commission reasonably believes that a person committed, or is about to commit, a violation of the [GCA]," it "may refer the matter to the attorney general or a district attorney for enforcement." Section 10-16-18(A); *see also* § 10-16-14(A) (authorizing the state ethics commission to "investigate suspected violations of the [GCA] and forward its findings and evidence to the attorney general, district attorney or appropriate state agency or legislative body for

---

making no such commentary for Subsection 10-16-3(C)); *Compliance Guide, supra*, at 18 (including Subsection 10-16-3(C)'s "guiding principle" of full disclosure in the GCA's "ethical principles"). Notwithstanding the persuasive weight accompanying an "interpretation of a statute by the administrative body charged with enforcing it," *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-031, ¶ 9, 123 N.M. 239, 938 P.2d 1384, the extent to which the Compliance Guide undercuts our statutory analysis is ultimately inconsequential in light of the plain language of the statute. *See Chatterjee*, 2012-NMSC-019, ¶ 11 (explaining that when determining the legislative intent, our task is to "look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended" (internal quotation marks and citation omitted)).

enforcement"). In instances of knowing and willful violations of the GCA, the attorney general or a district attorney is authorized to bring criminal charges. *See* §§ 10-16-3(D), -4(A), -17 (designating as a felony or misdemeanor the knowing and willful violation of the provisions of the GCA).

**{26}**   The only provision limiting the ability of the attorney general or a district attorney from enforcing the GCA is Section 10-16-14(E), which prohibits a district attorney from enforcing the GCA "as regards legislators, state employees or statewide elected officials." Apart from Section 10-16-14(E), nothing in the statutory framework of the GCA limits the discretion of the attorney general or a district attorney to prosecute a knowing and willful violation of the GCA. We therefore reject Defendant Gutierrez's argument that penalties for violations of Subsections 10-16-3(A)-(C) are limited to civil penalties and sanctions. *See Chatterjee*, 2012-NMSC-019, ¶ 11 ("When attempting to determine the Legislature's intent, we look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." (alteration, internal quotation marks, and citation omitted)).

## C.   The Rule of Lenity

**{27}**   The parties also contest whether the rule of lenity requires that we construe Subsections 10-16-3(A)-(C) as failing to provide for criminal offenses. "The rule of lenity counsels that criminal statutes should be interpreted in the defendant's favor when insurmountable ambiguity persists regarding the intended scope of a criminal statute[,]" *State v. Tafoya*, 2010-NMSC-019, ¶ 23, 148 N.M. 391, 237 P.3d 693 (internal quotation marks and citation omitted), or "when we are unable to discern legislative intent." *State v. Yazzie*, 2018-NMCA-001, ¶ 15, 410 P.3d 220 (internal quotation marks and citation omitted). Lenity, however, "is reserved for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute." *State v. Ogden*, 1994-NMSC-029, ¶ 26, 118 N.M. 234, 880 P.2d 845 (internal quotation marks and citation omitted). As we have concluded that the plain language of Section 10-16-17 evidences the Legislature's intent that knowing and willful violations of Subsections 10-16-3(A)-(C) be punished as crimes and not treated merely as ethical considerations, we decline to apply the rule of lenity to this effect. We now turn to Defendants' argument that Subsections (A)-(C) are unconstitutionally vague.

## II.   Vagueness

**{28}**   Defendants argue that, in the event we conclude the Legislature intended to impose criminal liability for violations of Subsections (A)-(C), then the subsections are nonetheless void for vagueness. "We review a vagueness challenge de novo." *State v. Duttle*, 2017-NMCA-001, ¶ 13, 387 P.3d 885 (internal quotation marks and citation omitted). "A strong presumption of constitutionality underlies each legislative enactment, and the party challenging constitutionality has the burden of proving a statute is unconstitutional beyond all reasonable doubt." *Id.* (internal quotation marks and citation omitted). "Appellate courts have a duty to construe a statute in such a manner that it is

not void for vagueness if a reasonable and practical construction can be given to its language." *Id.* (internal quotation marks and citation omitted). To the extent the parties' arguments involve not only a facial vagueness analysis but also an as-applied vagueness analysis, we must first address the extent to which an as-applied vagueness analysis is proper given the procedural posture of the cases at bar.

## A.    As-Applied Vagueness vs. Facial Vagueness

**{29}**    Before discussing whether consideration of an as-applied challenge was appropriate under the circumstances in the present cases, we first note the distinction between facial and as-applied vagueness challenges. "In a facial challenge to [a statute], we consider only the text of the [statute] itself, not its application; whereas, in an as-applied challenge, we consider the facts of the case to determine whether application of the [statute] even if facially valid deprive[s] the challenger of a protected right." *Vill. of Ruidoso v. Warner*, 2012-NMCA-035, ¶ 5, 274 P.3d 791. Whereas "the facts of [the challenging party's] particular case do not affect our review" of facial challenges, the facts of the challenging party's particular case are relevant in an as-applied challenge because "the challenging party contests only how the statute . . . was applied against him or her within a particular context[.]"*Jackson v. City of Chi.*, 2012 IL App (1st) 111044, ¶ 27); *see Bounds v. State ex rel. D'Antonio*, 2013-NMSC-037, ¶ 14 n.2, 306 P.3d 457 (quoting *Jackson* for the proposition relevant to facial challenges). The "particular context" depends on factual determinations which no jury has yet made in any of these cases. The district court's consideration of an as-applied challenge in the absence of a trial was premature. *See State v. Muraida*, 2014-NMCA-060, ¶ 12, 326 P.3d 1113 (explaining that dismissal of charges under *Foulenfont* "can only be granted if such charges can be disposed of solely by deciding a question of law"); *State v. LaPietra*, 2010-NMCA-009, ¶ 7, 147 N.M. 569, 226 P.3d 668 ("Questions of fact . . . are the unique purview of the jury and, as such, should be decided by the jury alone."). We therefore decline to further consider an as-applied challenge on appeal, and we turn now to an examination of whether the statute is facially vague.

## B.    Defendants' Facial Vagueness Claims

**{30}**    To support a facial vagueness challenge, Defendants must demonstrate "that the statute is void in all its applications; or, stated another way, if [their] own conduct is clearly proscribed under the statute, [they] cannot assert that the statute is unconstitutionally vague as it might be applied to the conduct of others." *State ex rel. Children, Youth & Families Dep't v. Patricia N.*, 2000-NMCA-035, ¶ 15, 128 N.M. 813, 999 P.2d 1045 (internal quotation marks and citation omitted). *But see Johnson v. United States*, ___ U.S. ___, ___, 135 S. Ct. 2551, 2561 (2015) (noting that the United States Supreme Court's "holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp" (emphasis omitted)). A statute is unconstitutionally vague if it "(1) fails to provide persons of ordinary intelligence using ordinary common sense a fair opportunity to determine whether their conduct is prohibited, or (2) fails to create minimum guidelines for enforcement and thus encourages subjective and ad hoc

application of the law." *Duttle*, 2017-NMCA-001, ¶ 13 (omissions, internal quotation marks, and citation omitted). Upon examination of Subsections 10-16-3(A)-(C), we conclude that unlike Subsection (A), Subsections (B) and (C) are unconstitutionally vague.[3]

## 1.    Subsection (A)

**{31}**    Determining whether Subsection (A) is vague requires that we interpret the statute and identify the prohibited conduct, which we review de novo. *See Duttle*, 2017-NMCA-001, ¶ 14 ("In determining the prohibited conduct, we review questions of statutory interpretation de novo."). Subsection (A) begins by identifying those who are subject to its requirements and describing certain proscribed conduct, stating, "[a] legislator or public officer or employee shall treat the legislator's or public officer's or employee's government position as a public trust." Section 10-16-3(A). This sentence appears to be intended as merely a prefatory illustration of the general principle to which the identified officials should aspire. The Legislature continued, explaining the conduct required to treat a government position as a public trust: "The legislator or public officer or employee shall use the powers and resources of public office only to advance the public interest and not to obtain personal benefits or pursue private interests." *Id.* Because the terms "public interest," "personal benefits," and "private interests" are not defined in the subsection and do not appear elsewhere within the GCA, leaving us unable to rely on other statutory provisions to help discern their plain meaning, we must construe these terms, giving them "their ordinary meaning absent clear and express legislative intention to the contrary." *State v. Tsosie*, 2011-NMCA-115, ¶ 19, 150 N.M. 754, 266 P.3d 34 (internal quotation marks and citation omitted).

**{32}**    Neither this Court, nor our Supreme Court has taken the opportunity to define "public interest" in a context similar to that of Subsection 10-16-3(A). However, "public interest" is generally defined as "[t]he general welfare of a populace considered as warranting recognition and protection"; and "[s]omething in which the public as a whole has a stake; [especially], an interest that justifies governmental regulation," *Public Interest*, Black's Law Dictionary (11th ed. 2019), or "the general welfare and rights of the public that are to be recognized, protected and advanced"; and "a specific public benefit or stake in something." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/interest#legalDictionary (last visited on April 21, 2020); *see also Battishill v. Farmers All. Ins. Co.*, 2006-NMSC-004, ¶ 8, 139 N.M. 24, 127 P.3d 1111 (relying on a dictionary definition to determine a term's ordinary meaning when it is not defined in the statute).

**{33}**    Aided by the ordinary meaning of "public interest," as well as its context within Subsection (A) as something other than obtaining "personal benefits" and "private interests," we conclude this subsection (1) mandates the use of the powers and

3We note that in A-1-CA-38283 (Defendant Padilla's case), the state ethics commission's amicus brief highlights the potential that voiding Section 10-16-3 for vagueness will have unforeseen ramifications in other, non-criminal applications of the statute. Given the facts and circumstances of these cases, we leave for another day an examination of the extent to which our holding affects the non-criminal applications of Section 10-16-3.

resources of a legislator's, public officer's, or public employee's public office only for the benefit of the people of New Mexico, and (2) prohibits legislators, public officers, and public employees from exploiting their powers and resources for private gain. *See* NMSA 1978, § 12-2A-2 (1997) ("Unless a word or phrase is defined in the statute or rule being construed, its meaning is determined by its context, the rules of grammar and common usage."). In arriving at our conclusion, we are aided by the legislative history of Subsection 10-16-3(A). In 2011, the Legislature amended the subsection to replace the qualification that a legislator's, public officer's, or public employee's powers and resources shall not be used "to obtain personal benefits or pursue private interests *incompatible with the public interest*[,]" § 10-16-3(A) (2007) (emphasis added), with the more stringent requirement that "the powers and resources of public office" be used "*only* to advance the public interest and not to obtain personal benefits or pursue private interests." § 10-16-3(A) (2011) (emphasis added). *See* 2011 N.M. Laws, ch. 138, § 3. This amendment makes clear the Legislature's intent that those subject to the provisions of Subsection 10-16-3(A) cannot use their powers and resources to obtain personal benefits or pursue private interests, even if they are not incompatible with the public interest, removing the need to consider whether the interests are incompatible because those powers and resources can only be used to advance the public interest.

**{34}**     To the extent the application of Subsection (A) requires a qualitative determination of what constitutes a public versus private interest, we note that, as a general rule, "the application of a qualitative standard . . . to real-world conduct" does not render a statute unconstitutionally vague. *Johnson*, ___ U.S. at ___, 135 S. Ct. at 2561; *see Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) ("Condemned to the use of words, we can never expect mathematical certainty from our language."). We also recognize the mitigating effect of the scienter requirement found in Section 10-16-17 (criminalizing the *knowing and willful* violation of any provision of the GCA) on any potential vagueness in Subsection 10-16-3(A). *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982) ("[T]he [United States Supreme] Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed."). We, therefore, conclude Subsection 10-16-3(A) provides a fair opportunity for persons of ordinary intelligence to determine whether his or her conduct is prohibited, as well as sufficient guidance for enforcement of the law such that it neither permits nor encourages subjective or ad hoc application.

**{35}**     Defendant Padilla argues that if we find the statute is not vague, the State is precluded from applying our "novel construction" to support its criminal prosecution in these instances, citing *United States v. Lanier*, 520 U.S. 259, 266 (1997). *Lanier* held that, "although clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute, due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope[.]" *Id.* (citations omitted). "The test in determining whether . . . an interpretation and retroactive application of a statute offends due process is whether the construction actually given the statute was foreseeable." *State v. Johnson*, 2001-NMSC-001, ¶ 14 n.4, 130 N.M. 6, 15 P.3d 1233. A court "engages in an

impermissible interpretation of a statute when the interpretation is so unexpected, and so outlandish, that no reasonable person could have expected it." *Id.* (alteration, internal quotation marks, and citation omitted).

**{36}** Our holding with respect to Subsection 10-16-3(A) rests on neither an unexpected nor unforeseeable judicial construction, but on the ordinary meaning and context of the terms used in the statute. *See Lanier*, 520 U.S. at 267 ("[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal."). This construction of Subsection (A) neither alters a preexisting interpretation by an appellate court in New Mexico nor enlarges the range of conduct covered under the subsection. *See State v. Myers*, 2011-NMSC-028, ¶¶ 13, 16, 150 N.M. 1, 256 P.3d 13 (recognizing that a judicial construction is unforeseeable when it either "contradicts binding precedent on the same question, upon which the accused could have relied[,]" or it expands the scope of otherwise "narrow and precise" statutory language (internal quotation marks and citation omitted)). Moreover, although this is the first time an appellate court in New Mexico has construed Subsection 10-16-3(A), "the mere absence of judicial authority on a point of law is hardly the test for a[n] . . . 'unexpected and indefensible' interpretation of a criminal statute." *Myers*, 2011-NMSC-028, ¶ 24; *see State v. Lovato*, 2011-NMCA-065, ¶ 16, 150 N.M. 39, 256 P.3d 982 (explaining that the fact that an opinion is the first to interpret a statute "is of little consequence" because when a court "engages in the judicial construction of a statute[,] it is explaining its understanding of what the statute has meant continuously since the date when it became law" (internal quotation marks and citation omitted)). Therefore, we conclude there is no facial due process violation with regard to the applicability of Subsection (A) to Defendants charged with violations of that subsection.

## 2. Subsection (B)

**{37}** We cannot reach the same conclusion with regard to Subsection 10-16-3(B). Subsection (B) provides, "Legislators and public officers and employees shall conduct themselves in a manner that justifies the confidence placed in them by the people, at all times maintaining the integrity and discharging ethically the high responsibilities of public service." Section 10-16-3(B). Although this subsection describes behavior to which the listed officials should aspire, it does not follow—as Subsection (A) does—with a definition or clarification of the conduct that is required to comply.[4] To the extent the phrases "conduct themselves in a manner that justifies the confidence placed in them by the people," "maintaining the integrity," and "discharging ethically" were intended to require or prohibit certain conduct, we are nevertheless unable to ascertain with any reasonable degree of certainty the conduct the Legislature intended to prohibit. *See*

---

[4]*But see, e.g.*, Colo. Rev. Stat. Ann. § 24-18-103 (West 1988) (establishing that "[t]he holding of public office or employment is a public trust" and that public officers, members of the general assembly, local government officials, or employees "shall carry out [their] duties for the benefit of the people of the state," and shall not engage in conduct that "departs from [their] fiduciary duty"; Colo. Rev. Stat. Ann. §§ 24-18-104 (West 2012), -106 (West 2010), -108 (West 1991), -108.5 (West 1991), and -109 (West 2017) (enumerating acts, the commission of which constitute breaches of the actor's fiduciary duty and the public trust).

*Johnson*, ___ U.S. at ___, 135 S. Ct. at 2561 ("Because the elements necessary to determine the imaginary ideal are uncertain both in nature and degree of effect, this abstract inquiry offers significantly less predictability than one that deals with the actual, not with an imaginary condition other than the facts." (alteration, internal quotation marks, and citation omitted)); *Tsosie*, 2011-NMCA-115, ¶ 32 ("A statute may be void for vagueness if its meaning is so uncertain that the court is unable, by the application of known and accepted rules of construction, to determine what the Legislature intended with any reasonable degree of certainty." (internal quotation marks and citation omitted)). *But cf. Grayned*, 408 U.S. at 110 (recognizing that words do not provide mathematical certainty and sometimes require the application of a qualitative standard). Even after resort to a construction of these terms—which are undefined in Subsection 10-16-3(B) or the GCA as a whole—we are unable to discern what conduct is prohibited and made subject to criminal prosecution. *See Duttle*, 2017-NMCA-001, ¶ 13 (explaining that we must "construe a statute in such a manner that it is not void for vagueness if a reasonable and practical construction can be given to its language" (internal quotation marks and citation omitted)).

**{38}** We, therefore, conclude Subsection (B) not only fails to provide persons of ordinary intelligence a fair opportunity to determine whether their conduct is prohibited, but also fails to provide minimum guidance that would preclude subjective and ad hoc application of the law. *See Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971) (concluding that when "no standard of conduct is specified at all" the law is unconstitutionally vague in that "men of common intelligence must necessarily guess at its meaning" (internal quotation marks and citation omitted)); *State v. Smile*, 2009-NMCA-064, ¶ 20, 146 N.M. 525, 212 P.3d 413 ("In order to fall within the arbitrary and discriminatory prong of the vagueness test, the statute must have no standards or guidelines and therefore allow, if not encourage, subjective and *ad hoc* application." (alterations, internal quotation marks, and citation omitted)). Accordingly, Subsection (B) is vague and cannot form the basis for criminal charges under Section 10-16-17.

### 3. Subsection (C)

**{39}** Finally, Subsection 10-16-3(C) provides: "Full disclosure of real or potential conflicts of interest shall be a guiding principle for determining appropriate conduct. At all times, reasonable efforts shall be made to avoid undue influence and abuse of office in public service." Although we generally must first determine the prohibited conduct in order to determine whether the statute itself is void for vagueness, we need not discuss the conduct the subsection purports to prohibit or require because the subsection does not provide adequate guidance as to *whom* its requirements apply.

**{40}** The GCA governs the conduct of various actors: legislators, public officers and employees, former public officers and employees, state agencies, private citizens, and businesses that contract with state and local government agencies. *See, e.g.*, §§ 10-16-3(D) (prohibiting certain activities by legislators, public officers and employees, and any "person"); -8(B) (prohibiting certain conduct by former public officers and employees); -9(A) (prohibiting certain conduct by state agencies); -13.3(A) (prohibiting certain

conduct by businesses that contract with state or local government agencies to provide financial services). While this issue was not specifically raised on appeal, we note that generally, the GCA's sections identify the actors subject to their prohibitions and requirements. Indeed, Subsections (A), (B), and (D) of Section 10-16-3 limit the applicability of their requirements to specific classes of persons. *See* §§ 10-16-3(A) ("A legislator or public officer or employee shall . . . "); -3(B) ("Legislators and public officers and employees shall . . . "); -3(D) ("No legislator or public officer or employee may . . . " and "no person may . . . "). Subsection (C) contains no explanation of the actors to whom it applies.[5]

**{41}**   When read together with Section 10-16-3's heading ("Ethical principles of public services; certain official acts prohibited; penalty"), the plain language of Subsection (C) suggests that the subsection was not intended to apply to former public officers and employees, private citizens, or businesses. *See Tri-State Generation & Transmission Ass'n, Inc.*, 2012-NMSC-039, ¶ 18 (explaining that we may look to a section's heading, "and ordinarily it may be considered as a part of the act if necessary to its construction" (internal quotation marks and citation omitted)); 73 Am. Jur. 2d *Statutes* § 100 (explaining that a section's heading is a tool "for the resolution of doubt about the meaning of a statute"). Nonetheless, we are still unable to glean the Legislature's intent concerning the class of persons subject to the requirements or prohibitions of Subsection (C). Moreover, our task in discerning such intent is complicated by the Legislature's inclusion of specific classes of persons in the surrounding subsections, but its omission from Subsection (C). *See State v. Ramos*, 2013-NMSC-031, ¶ 15, 305 P.3d 921 (observing that when the Legislature knew how to include something, and did not, we assume the choice was deliberate); *Hubble*, 2009-NMSC-014, ¶ 10 (noting that "[w]e will not read into a statute language which is not there"). Although our task on appeal is "to construe a statute in such a manner that it is not void for vagueness if a reasonable and practical construction can be given to its language[,]" *Duttle*, 2017-NMCA-001, ¶ 13 (internal quotation marks and citation omitted), and "to read related statutes in harmony so as to give effect to all provisions[,]" *Benavides v. E. N.M. Med. Ctr.*, 2014-NMSC-037, ¶ 24, 338 P.3d 1265 (internal quotation marks and citation omitted), the diversity of classes of persons specified in not only Section 10-16-3 but also among and within the remaining sections of the GCA renders Subsection (C) devoid of the minimum guidance necessary to ward off a due process violation.

---

5The state ethics commission's amicus brief attempts to resolve any ambiguity with regard to the class of persons governed by Subsection 10-16-3(C) by arguing that rather than functioning independently, this subsection "combine[s]" with Subsection 10-16-3(B) "to impose a duty on legislators, public officers, and public employees to disclose real or potential conflicts of interest." In other words, the state ethics commission argues, Subsection (B) details to whom the duty applies while Subsection (C) details what conduct is required under that duty. Notwithstanding the general rule that "[a] statutory subsection may not be considered in a vacuum, but must be considered in reference to the statute as a whole and in reference to statutes dealing with the same general subject matter[,]" *State v. Smith*, 2004-NMSC-032, ¶ 10, 136 N.M. 372, 98 P.3d 1022, we reject the state ethics commission's argument because Section 10-16-3 is devoid of any language that would support such a conclusion. *See Chatterjee*, 2012-NMSC-019, ¶ 11 (providing the plain language rule); *State v. Hubble*, 2009-NMSC-014, ¶ 10, 146 N.M. 70, 206 P.3d 579 (noting that "[w]e will not read into a statute language which is not there").

**{42}** The lack of any minimum guidance with regard to the class of persons whose conduct is governed by Subsection (C) renders it vague in two respects: (1) it fails to give people of ordinary intelligence a reasonable opportunity to know whether their conduct is prohibited because they have no notice as to whether they are a member of the class of persons contemplated under Subsection (C); and (2) it invites subjective and ad hoc application of the law because law enforcement officials have no guidance as to the class of persons subject to the requirements of the subsection. *See Duttle*, 2017-NMCA-001, ¶ 13. In the absence of any such guidance, we conclude Subsection (C) is vague on its face and cannot form the basis of a criminal charge under Section 10-16-17.

**CONCLUSION**

**{43}** We reverse the district courts' dismissals of the counts charging Defendants under Subsection 10-16-3(A) and affirm the dismissals of the counts charging Defendants under Subsections 10-16-3(B)-(C). We therefore remand to the district courts for reinstatement of the Subsection 10-16-3(A) charges against Defendants Gutierrez, Estevez, and Johnston.

**{44} IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**RICHARD C. BOSSON, Judge Pro Tempore**

**MICHAEL D. BUSTAMANTE, Judge Pro Tempore**