The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: September 26, 2022

**NO. S-1-SC-38367**

**CONSOLIDATED WITH**

**NO. S-1-SC-38368**

**STATE OF NEW MEXICO,**

  Plaintiff-Respondent/Cross-Petitioner,

v.

**DAVID GUTIERREZ,**

  Defendant-Petitioner/Cross-Respondent,

and

**CONNIE LEE JOHNSTON,**

  Defendant-Petitioner/Cross-Respondent,

and

**FRANCESCA ESTEVEZ,**

  Defendant-Petitioner/Cross-Respondent,

and

**DEMESIA PADILLA,**

  Defendant-Cross-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Angie K. Schneider, District Judge**

Bennett J. Baur, Chief Public Defender
Steven James Forsberg, Assistant Public Defender
Santa Fe, NM

for Petitioner/Cross-Respondent Gutierrez

Sitterly Law Firm, LLC
Nicholas Sitterly
Albuquerque, NM

for Petitioners/Cross-Respondents Johnston and Estevez

Kennedy, Hernandez & Associates, P.C.
Paul John Kennedy
Jessica Hernandez
Albuquerque, NM

for Cross-Respondent

Hector H. Balderas, Attorney General
Walter M. Hart, III, Assistant Attorney General
Santa Fe, NM

for Respondent/Cross-Petitioner

New Mexico State Ethics Commission
Jeremy Daniel Farris
James Walker Boyd
Albuquerque, NM

for Amicus Curiae

**OPINION**

**BACON, Chief Justice.**

{1}     This consolidated case requires us to determine whether the Legislature intended for violations of NMSA 1978, Section 10-16-3(A)-(C) (2011) ("Subsections (A)-(C)") of the Governmental Conduct Act (GCA), NMSA 1978, §§ 10-16-1 to -18 (1967, as amended through 2019), to be punishable as criminal violations and, if so, whether Subsections (A)-(C) are unconstitutionally vague. In four separate and unrelated cases, Petitioners/Cross-Respondents David Gutierrez, Francesca Estevez, and Connie Lee Johnston (Petitioners) and Cross-Respondent Demesia Padilla were each charged under two or all three of those subsections. District court orders dismissed the charges in all four cases on different grounds, and Respondent/Cross-Petitioner State of New Mexico appealed.

{2}     The Court of Appeals first concluded that the Legislature intended for violations of Subsections (A)-(C) to be punishable as crimes, relying on its plain-meaning statutory interpretation of the GCA's penalty provision, § 10-16-17 ("Criminal penalties"). *State v. Gutierrez*, 2020-NMCA-045, ¶¶ 10-24, 472 P.3d 1260. On the void-for-vagueness issue, the Court of Appeals concluded that Subsection (A) of Section 10-16-3 is not unconstitutionally vague whereas Subsections (B) and (C) are unconstitutionally vague. *Gutierrez*, 2020-NMCA-045,

¶¶ 28-42. We reverse on the statutory interpretation issue, thereby vacating the charges brought under Subsection (A). We hold that the Legislature intended for Subsections (A)-(C) to be applied as ethical principles rather than as criminal statutes. This holding forecloses any unconstitutional vagueness analysis.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Relevant Statutes

{3}  We begin by providing the relevant sections of the GCA. We then summarize the underlying district court cases and the Court of Appeals' consolidated opinion.

{4}  Section 10-16-3 of the GCA provides:

**Ethical principles of public service; certain official acts prohibited; penalty.**

A. A legislator or public officer or employee shall treat the legislator's or public officer's or employee's government position as a public trust. The legislator or public officer or employee shall use the powers and resources of public office only to advance the public interest and not to obtain personal benefits or pursue private interests.

B. Legislators and public officers and employees shall conduct themselves in a manner that justifies the confidence placed in them by the people, at all times maintaining the integrity and discharging ethically the high responsibilities of public service.

C. Full disclosure of real or potential conflicts of interest shall be a guiding principle for determining appropriate conduct. At all times, reasonable efforts shall be made to avoid undue influence and abuse of office in public service.

D. No legislator or public officer or employee may request or receive, and no person may offer a legislator or public officer or employee, any money, thing of value or promise thereof that is conditioned upon or given in exchange for promised performance of an official act. Any person who knowingly and willfully violates the provisions of this subsection is guilty of a fourth degree felony and shall be sentenced pursuant to the provisions of [NMSA 1978, ]Section 31-18-15 [(2007, amended 2022)].

{5} Section 10-16-17, the penalty provision of the GCA, provides:

Unless specified otherwise in the [GCA], any person who knowingly and willfully violates any of the provisions of [the GCA] is guilty of a misdemeanor and shall be punished by a fine of not more than one thousand dollars ($1,000) or by imprisonment for not more than one year or both. Nothing in the [GCA] shall preclude criminal prosecution for bribery or other provisions of law set forth in the constitution of New Mexico or by statute.

**B. The Underlying Cases in the District Courts**

{6} We restate here the Court of Appeals' succinct recitation of the facts in the four separate and unrelated underlying cases:

[Petitioner] Gutierrez

The State charged [Petitioner] Gutierrez with violating [S]ection[] 10-16-3(A)-(C) of the GCA, alleging he pursued an unwanted sexual relationship with one of his employees during the course of his work as county treasurer by repeatedly commenting on her physical appearance and offering to give her money and use his authority as treasurer to expunge a prior disciplinary write-up in exchange for sex. [Petitioner] Gutierrez filed three motions, which included a motion in limine, a motion to dismiss, and a motion pursuant to *State v. Foulenfont*, 1995-NMCA-028, ¶ 6, 119 N.M. 788, 895 P.2d 1329 (authorizing dismissal of a case in lieu of an evidentiary hearing or a trial on the merits where a case raises a purely legal issue). These

3

motions made largely the same assertion—that the provisions of [S]ection[] 10-16-3(A)-(C) do not define or create criminal offenses, but instead are ethical principles intended to guide the behavior of public officials.

The district court granted [Petitioner] Gutierrez's motions and dismissed the indictment, reasoning that violations of [S]ection[] 10-16-3(A)-(C) were not crimes but "ethical considerations," and that the grand jury indictment, therefore, "failed to allege the commission of a criminal offense."

*Gutierrez*, 2020-NMCA-045, ¶¶ 4, 5.

[Petitioner] Estevez

The State charged [Petitioner] Estevez, in relevant part, with violating [S]ection[] 10-16-3(A) and (B) of the GCA, alleging she attempted to use her position as district attorney to manipulate or intimidate officers who were investigating allegations that she improperly used a state vehicle for personal use. [Petitioner] Estevez filed a motion to dismiss these counts, arguing the GCA was unconstitutionally vague. The district court concluded that although Section 10-16-3 establishes "advisory guideposts setting forth standards of ethical conduct[,]" insurmountable ambiguities existed regarding its intended scope and the applicability of Section 10-16-17's provision for criminal penalties. As a result, the district court applied the rule of lenity and dismissed the charges.

*Gutierrez*, 2020-NMCA-045, ¶ 6 (sixth alteration in original).

[Petitioner] Johnston

The State charged [Petitioner] Johnston, in relevant part, with violating [S]ection[] 10-16-3(A) and (B) based on allegations that, while acting in her capacity as a magistrate judge, [Petitioner] Johnston unlawfully recorded the communications of her colleagues and coworkers in secure areas within the Aztec Magistrate Court Building. [Petitioner] Johnston filed a motion to dismiss these charges, arguing

4

that the subsections at issue set forth "aspirational provisions" rather than criminal offenses and are unconstitutionally vague. The district court dismissed the charges, concluding that even if Subsections (A) and (B) provided for criminal offenses, they were nevertheless void for vagueness.

*Gutierrez*, 2020-NMCA-045, ¶ 7.

[Cross-Respondent] Padilla

The State charged [Cross-Respondent] Padilla, in relevant part, with violating [S]ection[] 10-16-3(B) and (C), alleging she used her position as the Secretary of the New Mexico Taxation and Revenue Department to access the tax records of the accounting firm at which she worked prior to her appointment as well as the records of her former clients. [Cross-Respondent] Padilla filed motions to dismiss these charges, arguing the subsections at issue were unconstitutionally vague and overbroad. The district court granted [Cross-Respondent] Padilla's motions and dismissed these charges.

*Gutierrez*, 2020-NMCA-045, ¶ 8.

## C. The Court of Appeals' Consolidated Opinion

{7} In all four cases, the State appealed the district courts' orders dismissing the charges brought under Subsections (A)-(C). *Gutierrez*, 2020-NMCA-045, ¶ 2. Though the district courts dismissed those charges on different grounds, the Court of Appeals consolidated based on the identical issues shared by the four cases. *Id.*

{8} As we recount below, being central to our determination, the Court of Appeals first conducted statutory interpretation as to whether violations of Subsections (A)-

5

(C) of Section 10-16-3 are criminal offenses. *Gutierrez*, 2020-NMCA-045, ¶ 9. Under de novo review, the Court concluded in the affirmative. *Id.* ¶¶ 12, 19, 24.

{9} The Court of Appeals then analyzed whether Subsections (A)-(C) are unconstitutionally vague. *Gutierrez*, 2020-NMCA-045, ¶¶ 28-42. The Court held that Subsection (A) is not unconstitutionally vague. *Gutierrez*, 2020-NMCA-045, ¶¶ 31-36. Accordingly, the Court reversed the district courts' dismissals of the counts brought under Subsection (A) and remanded to the respective district courts for reinstatement of those charges against Petitioners Gutierrez, Estevez, and Johnston. *Gutierrez*, 2020-NMCA-045, ¶ 43. The Court also held that Subsections (B) and (C) are unconstitutionally vague and accordingly affirmed the district courts' dismissals of the counts charging Petitioners and Cross-Respondent under those subsections. *Gutierrez*, 2020-NMCA-045, ¶¶ 37-43. Because we reverse on the statutory interpretation issue, we do not recount the Court's unconstitutional vagueness analysis.

{10} In its statutory interpretation, the Court of Appeals began by recognizing that if the plain language of a statute renders its "'meaning . . . truly clear—not vague, uncertain, ambiguous, or otherwise doubtful—it is of course the responsibility of the judiciary to apply the statute as written.'" *Id.* ¶ 12 (quoting *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 22, 117 N.M. 346, 871 P.2d 1352). The Court stated

that "[w]e therefore first consider whether the language of the statutes at issue is clear, or whether we must look further before applying the statutes to the facts of these cases." *Id.*

{11} The Court of Appeals then reviewed the plain language of Section 10-16-17. *Gutierrez*, 2020-NMCA-045, ¶ 13. The Court concluded that under that provision a defendant is guilty of a misdemeanor when three requirements are satisfied: (1) "a defendant must have violated a provision of the GCA," (2) "the violation must have been knowing and willful," and (3) "the violation must not be subject to treatment otherwise specified in the GCA." *Id.*

{12} Noting the parties' focus on Section 10-16-3(A)-(C), the Court of Appeals then provided the text of Section 10-16-3. *Gutierrez*, 2020-NMCA-045, ¶ 14. However, the Court did not also conduct a textual analysis of Subsections (A)-(C).[1]

{13} The Court of Appeals next considered Petitioners' and Counter-Respondent's arguments that the heading of Section 10-16-3, "Ethical principles of public service; certain official acts prohibited; penalty," establishes legislative intent for Section 10-16-3(A)-(C) to exist outside the scope of Section 10-16-17. *Gutierrez*, 2020-NMCA-

---

[1]We note that the Court of Appeals did subsequently analyze the plain language of Subsections (A)-(C) as part of its unconstitutional vagueness analysis. *See Gutierrez*, 2020-NMCA-045, ¶¶ 31-42.

7

045, ¶ 14. They argued under the section's heading (1) that, as ethical principles, "compliance with Subsections (A)-(C) is merely aspirational and, therefore, any violations of those provisions are not crimes," and (2) "that criminal penalties are limited to [certain official acts] set out in Subsection (D)." *Gutierrez*, 2020-NMCA-045, ¶ 14.

{14} The Court of Appeals rejected these arguments regarding the heading of Section 10-16-3 under its plain-meaning construction of Section 10-16-17. *Gutierrez*, 2020-NMCA-045, ¶¶ 17, 18. The Court noted that a section's heading "'ordinarily . . . may be considered as a part of the act if necessary to its construction,'" *id.* ¶ 15 (quoting *Tri-State Generation & Transmission Ass'n, Inc. v. D'Antonio*, 2012-NMSC-039, ¶ 18, 289 P.3d 1232), but may not be used "'to produce an ambiguity in a statute which is otherwise clearly drafted,'" *id.* (quoting *Serrano v. State Dep't of Alcoholic Beverage Control*, 1992-NMCA-015, ¶ 12, 113 N.M. 444, 827 P.2d 159). Because the Court found no ambiguity in the plain meaning of the body's text, the Court concluded that arguments relying on the heading to establish ambiguity were foreclosed. *Id.* ¶¶ 16-18.

{15} The Court of Appeals also considered Cross-Respondent Padilla's argument that absurdity would result from a strict application of the plain language of Section 10-16-17 to various provisions of the GCA. *Gutierrez*, 2020-NMCA-045, ¶¶ 21-22

8

("If adherence to the plain meaning of a statute would lead to absurdity, we must reject that meaning and construe the statute according to the obvious intent of the Legislature.") (brackets omitted) (citing *State v. Maestas*, 2007-NMSC-001, ¶ 16, 140 N.M. 836, 149 P.3d 933)). The Court reiterated our warning in *Helman* that the "beguiling simplicity" of the plain-meaning rule

> may mask a host of reasons why a statute, apparently clear and unambiguous on its face, may for one reason or another give rise to legitimate (i.e., nonfrivolous) differences of opinion concerning the statute's meaning. In such a case, it can rarely be said that the legislation is indeed free from all ambiguity and is crystal clear in its meaning.

*Id.* ¶ 20 (quoting *Helman*, 1994-NMSC-023, ¶ 23) (internal quotation marks omitted).

{16} Notwithstanding *Helman*'s warning, the Court of Appeals hewed to its plain-meaning construction of Section 10-16-17 in rejecting Cross-Respondent's argument. *Gutierrez*, 2020-NMCA-045, ¶¶ 22-23. The Court noted that Cross-Respondent's argument pointed only to GCA provisions *other than Subsections (A)-(C)* to allege that absurdity would result from strict application of Section 10-16-17 to the GCA. *Gutierrez*, 2020-NMCA-045, ¶¶ 21-23 ("[W]e need not pass judgment on the applicability of the criminal penalty set out in Section 10-16-17 to the violations of other sections of the GCA, as those violations are not before us today."). In the absence of an absurdity argument focused on violations of Subsections (A)-

9

(C) themselves, the Court concluded that "we cannot avoid the clear language of Section 10-16-17." *Gutierrez*, 2020-NMCA-045, ¶ 23.

{17} The Court of Appeals' "adherence to the plain[-]meaning rule" was bolstered by the legislative history of Sections 10-16-3 and 10-16-17. *Gutierrez*, 2020-NMCA-045, ¶ 24. Because those sections were enacted together, the Court presumed that the Legislature "intended that a knowing and willful violation of [S]ection[] 10-16-3(A)-(C) give rise to the misdemeanor criminal penalty called for in Section 10-16-17." *Gutierrez*, 2020-NMCA-045, ¶ 24. The Court also noted that the Legislature has added to or amended the GCA six times without amending Section 10-16-17, "suggesting its continued intent to impose the criminal penalty set out in that section." *Gutierrez*, 2020-NMCA-045, ¶ 24.

{18} The Court of Appeals concluded its statutory interpretation analysis by rejecting arguments that the penalty for a violation of Subsection (C) is limited to civil sanctions or penalties and that the rule of lenity should apply. *Gutierrez*, 2020-NMCA-045, ¶¶ 25-27. The Court rejected the first argument because no relevant provision in the GCA "limits the discretion of the attorney general or a district attorney to prosecute a knowing and willful violation of the GCA." *Id.* ¶ 26. In rejecting the second argument, the Court again applied its plain-meaning construction of Section 10-16-17, noting that lenity "'is reserved for those situations

in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute.'" *Gutierrez*, 2020-NMCA-045, ¶ 27 (quoting *State v. Ogden*, 1994-NMSC-029, ¶ 26, 118 N.M. 234, 880 P.2d 845).

{19} As discussed, the Court of Appeals reversed the district courts' dismissals of the counts charging Petitioners under Subsection (A), remanded for reinstatement of those counts, and affirmed the dismissals of the counts charging Petitioners and Cross-Respondent under Subsections (B) and (C) based on those provisions being unconstitutionally vague. *Gutierrez*, 2020-NMCA-045, ¶¶ 38, 42, 43.

**D.    Certiorari Granted**

{20} Following the consolidated appeal, Petitioners timely petitioned this Court for certiorari regarding the Court of Appeals' reinstatement of their charges under Subsection (A). Concurrently, the State timely petitioned for certiorari regarding the Court of Appeals' holding that Subsections (B) and (C) are unconstitutionally vague. This Court granted certiorari on the petitions and cross-petition and consolidated the cases.

**II.    DISCUSSION**

{21} The first issue raised in this appeal is one of statutory interpretation: whether the Legislature intended for violations of Subsections (A)-(C) of Section 10-16-3 to

11

be subject to criminal penalty. Because we hold that the Legislature did not so intend, we do not reach the issue of whether those subsections are unconstitutionally vague.

**A. Standard of Review for Statutory Interpretation**

{22} "We review questions of statutory . . . interpretation de novo." *State v. Radosevich*, 2018-NMSC-028, ¶ 8, 419 P.3d 176 (internal quotation marks and citation omitted). "The principal command of statutory construction is that the court should determine and effectuate the intent of the [L]egislature, using the plain language of the statute as the primary indicator of legislative intent." *State v. Willie*, 2009-NMSC-037, ¶ 9, 146 N.M. 481, 212 P.3d 369 (internal quotation marks and citation omitted); *see State v. Davis*, 2003-NMSC-022, ¶ 6, 134 N.M. 172, 74 P.3d 1064 ("Under the plain[-]meaning rule statutes are to be given effect as written without room for construction."). "If statutory language is doubtful, ambiguous, or an adherence to the literal use of the words would lead to injustice, absurdity, or contradiction, the court should reject the plain[-]meaning rule in favor of construing the statute according to its obvious spirit or reason." *State v. Adams*, 2022-NMSC-008, ¶ 16, 503 P.3d 1130 (internal quotation marks and citation omitted). We have said that

> [w]hile . . . one part of [a] statute may appear absolutely clear and certain to the point of mathematical precision, lurking in another part of the enactment, or even in the same section, or in the history and background of the legislation, or in an apparent conflict between the

statutory wording and the overall legislative intent, there may be one or more provisions giving rise to genuine uncertainty as to what the [L]egislature was trying to accomplish. In such a case, it is part of the essence of judicial responsibility to search for and effectuate the legislative intent—the purpose or object—underlying the statute.

*Helman*, 1994-NMSC-023, ¶ 23.

{23} "Statutes that define criminal conduct should be strictly construed and doubts regarding their interpretation or construction should be resolved in favor of lenity."

*State v. Anaya*, 1997-NMSC-010, ¶ 30, 123 N.M. 14, 933 P.2d 223.

**B.     Analysis**

**1.     The plain language of Subsections (A)-(C) demonstrates legislative intent as expressions of ethical principles for the GCA rather than as criminal statutes within the scope of Section 10-16-17**

{24} Petitioners and Cross-Respondent make multiple arguments supporting the contention that the Legislature did not intend for criminal charges to result from violations of the subsections under which they are charged. They assert that the Legislature understood that the text of Subsections (A)-(C) constitutes the aspirational language of ethical principles rather than elements of criminal statutes. They also argue that the Legislature understood that absurdity would result from a strict application of Section 10-16-17 to certain provisions of the GCA. Petitioners and Cross-Respondent also contend that the heading of Section 10-16-3 indicates that Subsections (A)-(C) were not intended to be criminally enforceable. In addition,

they argue that any persisting ambiguity as to the scope of the penalty provision should cause this Court to apply lenity.

**{25}** Quoting Section 10-16-17, the State argues that the Legislature's enactment of that penalty provision authorizes imposition of a misdemeanor criminal sanction for the knowing and willful violation of "'*any* of the provisions of'" the GCA, including Subsections (A)-(C). Citing *State v. Ramos*, 1993-NMCA-089, ¶ 10, 116 N.M. 123, 860 P.2d 765, the State asserts that the GCA is the Legislature's lawful expression under the police power of its substantial and significant interest in "defining the nature of [the State's] relationship with its public servants." The State further argues that a lack of statutory ambiguity in the body text of Sections 10-16-3 and -17 refutes and precludes arguments regarding the heading of Section 10-16-3. In addition, the State contends that the relevant statutes present no ambiguity sufficient to permit application of the rule of lenity.

**{26}** The core question before this Court is whether the Legislature intended for Section 10-16-17 to apply to Subsections (A)-(C) of Section 10-16-3. Resolution of that question begins with plain-meaning analysis of both statutes to determine if they can be enforced as written. *Davis*, 2003-NMSC-022, ¶ 6 ("We begin the search for legislative intent by looking first to the words chosen by the Legislature and the plain meaning of the Legislature's language." (internal quotation marks and citation

omitted)). If ambiguity results from that analysis, we then look beyond the plain meaning of the statutory language to determine and effectuate legislative intent. *Ortiz v. Overland Express*, 2010-NMSC-021, ¶ 21, 148 N.M. 405, 237 P.3d 707.

{27}    We agree with our Court of Appeals that the plain language of Section 10-16-17 appears to direct that all knowing and willful violations of the GCA, unless otherwise specified, are criminally punishable. *See Gutierrez*, 2020-NMCA-045, ¶ 13. However, as we discuss below, the plain language of Subsections (A)-(C) does not allow their enforcement as criminal statutes when considered in the light of fundamental principles of criminal law. The Court of Appeals appears to have limited its plain-meaning analysis of Subsections (A)-(C) to ascertaining the absence therein of *otherwise specified* language. *See generally Gutierrez*, 2020-NMCA-045, ¶¶ 14-17. Having so ascertained, the Court relied on its plain-meaning construction of Section 10-16-17 for its conclusion without further consideration of the text of Subsections (A)-(C). *See generally Gutierrez*, 2020-NMCA-045, ¶¶ 20-27. This limited analysis and reliance on one provision caused the Court to ignore whether Subsections (A)-(C) *could be* enforced as criminal statutes.

{28}    The importance of fully considering the texts of related provisions is demonstrated in *State v. Padilla*, 2008-NMSC-006, 143 N.M. 310, 176 P.3d 299, which turned on the relationship of the aggravated fleeing statute, NMSA 1978, §

15

30-22-1.1 (2003, amended 2022), to the Law Enforcement Safe Pursuit Act (LESPA), NMSA 1978, §§ 29-20-1 to -4 (2003).

{29}     In *Padilla*, we considered "whether the Legislature intended the phrase 'in accordance with the provisions of the LESPA' found at the end of the aggravated fleeing statute to be an essential element of the crime of aggravated fleeing." 2008-NMSC-006, ¶ 8 (brackets omitted). Under a plain-meaning analysis of the aggravated fleeing statute alone—without also analyzing the LESPA—the *Padilla* Court could have concluded that "the Legislature intended the phrase [in question] to be an essential element, . . . and [thus] a pursuit not [being] 'in accordance' with the LESPA would nullify an otherwise valid arrest and prosecution for aggravated fleeing." *Id.* Such a law would be unusual in conditioning criminal liability on "the officer's conduct in purs[u]ing a suspect." *Id.* ¶ 23. The *Padilla* Court recognized the Legislature's authority to enact such a law, but nonetheless analyzed the LESPA as well, since "we would be remiss in our duties of judicial review if we did not demand a high level of confidence before concluding that the Legislature intended such an unorthodox result." *Id.*

{30}     Under that further analysis, the *Padilla* Court found that the text of the LESPA "included an enforcement mechanism within . . . itself" that represented the Legislature's affirmative choice of an effective means to ensure compliance. *Id.* ¶¶

16

25, 28. That internal enforcement mechanism, the *Padilla* Court concluded, supported that "[t]he Legislature did not intend to create an *additional* enforcement mechanism for compliance" via the aggravated fleeing statute. *Id.* ¶ 33 (emphasis added). Full consideration of the LESPA thus led this Court to hold that "the Legislature did not intend the phrase [in question] to be an essential element of the crime" of aggravated fleeing. *Id. Padilla* implicitly counsels that full consideration of the text of each provision is warranted where the analysis turns on the relationship of those provisions.

{31} Here, we similarly would be remiss if we did not fully consider the text of Subsections (A)-(C) before concluding that the Legislature intended to criminalize those provisions. Applying *Helman*, the appearance of Section 10-16-17 as "absolutely clear and certain" could nonetheless mask or distort "what the [L]egislature was trying to accomplish" as to Subsections (A)-(C). *See Helman*, 1994-NMSC-023, ¶ 23.

{32} Accordingly, we analyze the plain language of Subsections (A)-(C) below, considering the nature of criminal statutes. As a general principle, criminal statutes "declare[] what conduct is criminal and prescribe[] the punishment to be imposed for such conduct." 1 Wayne R. LaFave, *Substantive Crim. L.* § 1.2, at 11 (3d ed. 2018). "Typically, criminal liability is premised upon a defendant's culpable

17

conduct, the *actus reus*, coupled with a defendant's culpable mental state, the *mens rea*." *Padilla*, 2008-NMSC-006, ¶ 12 (citing 1 Wayne R. LaFave, *Substantive Crim. L.* § 1.2, at 11 (2d ed. 2003)). The actus reus is the "wrongful deed" or "forbidden act" that is defined by a criminal statute. *Actus reus*, *Black's Law Dictionary* (11th ed. 2019). A basic characteristic of substantive criminal law is that a statute "will spell out what act . . . is required for its commission." 1 LaFave, *supra*, § 1.2 at 11-12 (3d ed.).

{33} Under these principles, the plain language of Subsections (A)-(C) does not express conduct that would constitute a criminal actus reus. Subsection (A) requires that a "legislator or public officer or employee shall use the powers and resources of public office only to advance the public interest and not to obtain personal benefits or pursue private interests." Subsection (A) offers no definition as to which *uses of the powers and resources of public office* would qualify as criminal conduct, either by not *advancing the public interest* or by *obtaining personal benefits or pursuing private interests*.

{34} Subsection (B) requires that a legislator or public officer or employee shall "at all times maintain[] the integrity and discharg[e] ethically the high responsibilities of public service." Subsection (B) offers no definition as to what

18

conduct would qualify as criminal in not *maintaining the integrity or discharging ethically the high responsibilities of public service, at all times.*

{35} Without specifying the governmental actors within its scope, Subsection (C) requires that "[a]t all times, reasonable efforts shall be made to avoid undue influence and abuse of office in public service." Subsection (C) offers no definition as to what conduct would qualify as criminal in not exercising relevant *reasonable efforts, at all times*.

{36} Each relevant subsection communicates a general goal or proscription without specifying a wrongful deed or forbidden act. We need not entertain hypotheticals to recognize that the plain language of each subsection does not spell out what act or omission is required for its violation and does not establish criminal elements that could inform clear jury instructions.

{37} "We presume that the [L]egislature acted with full knowledge of relevant statutory and common law," *State v. Tufts*, 2016-NMSC-020, ¶ 7, 500 P.3d 600 (internal quotation marks and citation omitted), including the necessity of a criminal statute to provide a sufficiently defined actus reus. Criminal enforcement of provisions that do not meet this standard would indeed be absurd. We presume as well that the Legislature acted with full knowledge of "the rule that criminal statutes must be sufficiently clear and definite to inform a person of ordinary intelligence

what conduct is punishable." *Swafford v. State*, 1991-NMSC-043, ¶ 41, 112 N.M. 3, 810 P.2d 1223. While this rule also underlies unconstitutional vagueness analysis, our presumption of the Legislature's knowledge of the rule should not be viewed as an analysis on vagueness but rather as bolstering our conclusion regarding the Legislature's intent for Subsections (A)-(C). Based on the foregoing, we conclude under our plain-meaning interpretation of Subsections (A)-(C) that the Legislature did not intend for those provisions to be enforced as criminal statutes.

{38} However, as aspirational expressions of ethical principles, Subsections (A)-(C) are effective and unambiguous. Subsection (A) grounds its proscription in the ideal of "treat[ing one's] government position as a public trust." Subsection (B) grounds its proscription in the ideal of "conduct[ing] themselves in a manner that justifies the confidence placed in them by the people." Subsection (C) grounds its proscription in the ideal of "[f]ull disclosure of real or potential conflicts of interest [as] a guiding principle for determining appropriate conduct." Seen as ethical principles, these provisions provide general guidance for the purpose and application of the GCA generally, and thus these provisions are not surplusage. *See State v. Vest*, 2021-NMSC-020, ¶ 18, 488 P.3d 626 ("A statute must be construed so that no part of the statute is rendered surplusage or superfluous." (internal quotation marks and citation omitted)).

20

{39}    Our plain-meaning interpretation of Subsections (A)-(C) is not eroded by the plain language of Section 10-16-17. By way of analogy, if a provision of the GCA merely stated "be good" in its entirety, then no penalty provision, regardless of the clarity of its language, could transform that general aspiration into an actus reus for a proper criminal statute.

**2.    The heading of Section 10-16-3 supports that Subsections (A)-(C) are not criminal provisions**

{40}    Further, our plain-meaning interpretation of Subsections (A)-(C) is bolstered by the Legislature's express use of "Ethical principles of public service" in the language of the heading of Section 10-16-3. Contrary to the State's suggestion, we are not bound by our canons of statutory interpretation to ignore such relevant evidence, as we discuss below.

{41}    First, as Petitioner Gutierrez cites, our "canons are not mandatory rules . . . [but] guides . . . designed to help [this Court] determine the Legislature's intent as embodied in particular statutory language." *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001); *see also Varity Corp. v. Howe*, 516 U.S. 489, 511 (1996) ("Canons of construction . . . are simply rules of thumb which will sometimes help courts determine the meaning of legislation." (internal quotation marks and citation omitted)).

{42}     Second, a relevant canon expressed in *Tri-State*, cited by both the parties and the Court of Appeals, provides that "ordinarily [a section's heading] may be considered as a part of the act *if necessary to its construction*." 2012-NMSC-039, ¶ 18 (emphasis added) (internal quotation marks and citation omitted); *see Gutierrez*, 2020-NMCA-045, ¶ 15 (quoting *Tri-State*, 2012-NMSC-039, ¶ 18). However, the underlying authority for that proposition offers no bar to the use of a statutory title to help determine "the nature and extent of [an] enactment." *State ex rel. State Corp. Comm'n v. Old Abe Co.*, 1939-NMSC-046, ¶ 27, 43 N.M. 367, 94 P.2d 105; *see generally id.* ¶¶ 26-28. To the contrary, the *Old Abe* Court stated that a "title is quite properly to be considered a part of an act, particularly where it is a constitutional requirement that every act have a title, as is true in this state." *Id.* ¶ 27 (citing N.M. Const. art. IV, § 16).[2]

{43}     Third, we look to the heading of Section 10-16-3 neither "to produce an ambiguity" nor "to establish a limitation that is not contained in the text"—two improper uses of the heading expressed by the Court of Appeals. *Gutierrez*, 2020-NMCA-045, ¶¶ 15-16 (internal quotation marks and citation omitted). Instead, we

---

[2]We find no compelling reason to view the proper use of a section's *heading* differently from that of a statutory *title*. *Cf.* NMSA 1978, § 12-2A-13 (1997) ("Headings and titles may not be used in construing a statute or rule unless they are contained in the enrolled and engrossed bill or rule as adopted.").

look to the express language in the heading of Section 10-16-3 as affirming our plain-meaning interpretation of Subsections (A)-(C) as ethical principles rather than criminal statutes.

{44} The remainder of the heading supports no contrary conclusion. We need not determine whether "certain official acts prohibited" refers to Subsections (A)-(C), since a *prohibition* need not be criminal and since that phrase refers at least to the prohibition on bribery in Subsection (D). *See* § 10-16-3. Also, the heading's use of "penalty" refers at the least to Subsection (D)'s express penalty of a fourth-degree felony, and we find no basis to conclude that the heading's use of "penalty" applies as well to Subsections (A)-(C). *See* § 10-16-3. In sum, the language of the heading of Section 10-16-3 supports that Subsections (A)-(C) of Section 10-16-3 were not legislatively intended to be criminal statutes.

## III.    CONCLUSION

{45} For the foregoing reasons, we hold that the Legislature intended for Subsections (A)-(C) of Section 10-16-3 to be applied within the GCA as ethical principles excepted from the scope of Section 10-16-17 rather than as criminal statutes. Under this holding, we determine no ambiguity exists within Subsections (A)-(C) of Section 10-16-3, and thus we have no need to apply the rule of lenity in the cases before us.

23

{46}     We reverse the Court of Appeals' determination that the Legislature intended to make violations of Subsections (A)-(C) of Section 10-16-3 subject to criminal liability. Accordingly, the district courts' orders dismissing charges under Section 10-16-3(A)-(C) against Petitioners and Cross-Respondent are affirmed.

{47}     **IT IS SO ORDERED.**

_____

**C. SHANNON BACON, Chief Justice**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Justice**

_____

**DAVID K. THOMSON, Justice**

_____

**BRIANA H. ZAMORA, Justice**

_____

**BRYAN P. BIEDSCHEID, Judge,**
**Sitting by Designation**

24